COULSON (WALTON v.). See Case No. 17,-132.

---

## Case No. 3,276.

### In re COULTER.

[2 Sawy. 42;[1] 5 N. B. R. 64; 1 Am. Law T. Rep. Bankr. 257; 3 Chi. Leg. News, 377; 4 Am. Law T. 131.]

District Court, D. Oregon. May 29, 1871.

MECHANIC'S LIEN, WHEN ATTACHES—BANKRUPTCY PROCEEDINGS DO NOT AFFECT LIEN—LIEN NOT OPPOSED TO POLICY OF BANKRUPT ACT.

1. Under the lien act of Oregon, the lien of a mechanic, or material man, arises from the doing of the work or furnishing the material, and attaches to the building from that time, upon the condition subsequent that the lien creditor file a notice of his intention to hold such lien

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

within three months from the completion of the building.

2. The notice required to be filed does not create the lien, but is necessary to preserve or continue it beyond three months after the completion of the building, and, therefore, the commencement of proceedings in bankruptcy between the doing of the work, or furnishing of material, and the filing of such notice does not impair or affect the lien or the right of the lien creditor to continue it by filing the notice.

[Cited in Re Cook, Case No. 3,151.]

3. The lien given by the local act to mechanics or material men is not opposed to the terms or policy of the bankrupt act, as it in no way prefers one creditor at the expense of another, or diminishes the general assets of the debtor otherwise applicable to the payment of his general creditors.

[In the matter of J. M. Coulter, a bankrupt.]

M. W. Fechheimer, for trustee.

Charles B. Bellinger and H. Y. Thompson, for creditors.

DEADY, District Judge. This is a motion by the trustee of the estate to expange a certain proof of debt. On February 23, 1870, petition was filed in bankruptcy against Coulter, and on March 3 he was adjudged a bankrupt. The usual warrant to take possession of the estate of the bankrupt issued at the same time, and on March 4 the first notice was published by the marshal. At the date of filing the petition the bankrupt was indebted to Uzafovage & Wright in the sum of one hundred and twenty-nine dollars and seventy-three cents, for material furnished by them to the bankrupt to be used in the construction of a brick building on lot four, in block fifty, in the town of Salem, Oregon, then, and at the date of the adjudication aforesaid, owned by said bankrupt.

That on March 8, and within three months from the furnishing of said materials, said creditors filed in the proper office a notice of their intention to hold a lien on said building and lot as a security for said indebtedness.

On March 21, U. & W. made proof of their debt before Willis, commissioner, as one secured by a lien upon the lot and building aforesaid, and stating in such proof the facts aforesaid.

On January 30, 1871, the trustee of the estate filed objections to the proof of debt, and moved that the same be expunged. The motion was referred to Mr. Register Hill, who found the facts as above stated, and the conclusion of law that U. & W. had no lien.

The question arising upon the objections, and argued by counsel, is whether the change of property in the lot and building, consequent upon the adjudication in bankruptcy, prevented the creditors U. & W. from thereafter filing their notice of lien with effect, although filed within the time allowed by the local lien act. The amount involved in this motion is small, although by stipulation other claims of a like nature are to abide

the decision of this one, but the principle involved is of great practical importance to the community. The decision of the question must turn mainly upon the proper construction to be given to the lien law. Before passing to that subject, it is well to note and bear in mind that the security given to mechanics and material men is not obnoxious to the letter, spirit or policy of the bankrupt act, because it works no injustice to any other creditor. In Foster v. Heirs of Stone, 20 Pick. 543, the court, in considering a somewhat similar case, said: "It may be remarked, however, that in one respect there is an important difference between mechanic's lien for labor and materials, and a lien created by attachment. In the latter case, an attaching creditor has no claim for preference over other creditors, except by his attachment; whereas, when a mechanic·obtains a lien under the statute, and relying thereon, increases the value of the land by erecting buildings thereon, he has a strong equitable claim for reimbursement to the extent of the value of his labor and materials, furnished for building, and in this respect he has a marked preference over the other creditors of the land, who had trusted to the personal credit of their debtor."

The lien is given to secure the claims of certain persons for the value of their labor and material bestowed upon the property of the debtor. The operation of the law is a convenient substitute for the giving of a mortgage or other express security day by day, for the value of such work and material, and is to be considered and enforced as such.

Upon the faith of this security, so given, the one party furnishes labor and material, and the other receives the benefit of them. This transaction, as has been said, is not in violation of the terms or policy of the bankrupt act, even although the owner of the property should be insolvent at the time, because such security or lien is only equivalent to the additional value which the creditor has by this means given to the property of the debtor, and therefore does not diminish the assets of the latter applicable to the payment of his pre-existing debts.

In Darby's Trustees v. Boatman's Sav. Inst. [Case No. 3,571], Mr. Justice Dillon,—Treat and Krekel concurring,—held in the language of the syllabus, that: "Advances made in good faith to an indebted person, to enable him to carry on his business, upon security taken at the time, do not violate either the terms or policy of the bankrupt act, since the debtor gets a present equivalent for the new debt he creates and the security he gives."

Bearing in mind, then, that so far as the bankrupt act is concerned, there is nothing to prevent these creditors from acquiring and enforcing this lien or security for their debt, I proceed to consider the main question—Have U. & W. acquired a lien upon the

property in question by reason of the facts stated?

The lien law of Oregon (Code Or. p. 763) provides (section 1): "Any person, who by virtue of a contract with the owner of a building," shall furnish any material for the construction of such building, "shall, upon filing the notice prescribed in the next section, have a lien upon such building and the lot of ground upon which the same is situated, for such * * * material * * * furnished." [Section 2:][2] If the person furnishing such material desires to avail himself of the provisions of the lien law, he must "at any time within three months from the completion of such building" file in the office of the county clerk a notice of his intention to hold a lien upon such building for the amount due. Section 3: "Such lien shall cease to exist at the end of one year after the completion of the building," unless proceedings are commenced to enforce it. Section 7: "Liens created in pursuance" of this law "shall have precedence over all other liens after the commencement of the building," and if the property is insufficient "to pay all such liens," they are then to be satisfied pro rata. Section 8: The lien against the building is to extend to the lot on which it is erected, if "at the time of erecting such building" the same "was the property of the person" who caused it to be erected. The remaining sections of the statute relate to the enforcement of the lien, and do not bear upon the question under consideration.

From the terms of this statute, indeed from the very fact of its enactment, it is manifest that it was the intention of the legislature to give mechanics and material men security for the amounts due them, without the trouble or inconvenience or even foresight upon their part, of taking any such security by special contract or pledge.

Counsel for the trustee maintains that as U. & W. did not file notice of intention to hold a lien until after the commencement of proceedings in bankruptcy, no lien was created on the property, when under the operation of the bankrupt act, it passed to the trustee; and that no lien upon the property could be created by filing such notice after the building and lot had vested in the trustee for the benefit of the general creditors. If the premises are admitted the conclusion follows. An adjudication in bankruptcy, and the assignment thereunder, relate to the filing of the petition and vest the property of the bankrupt, as of the date of such filing, in the assignee or trustee. Bank. Act, § 14 [1867 (14 Stat. 522)].

This argument for the trustee rests mainly upon the effect claimed for the provision quoted from section 1 of the act: "shall, upon filing the notice," etc., "have a lien upon such building," etc. Upon the language of this provision, it is maintained that the

filing of the notice is a condition precedent to acquiring a lien under any circumstances. That the lien is then and thereby created, and if prior thereto, the interest of the owner or debtor in the property has in any way become vested in another, the right and opportunity to create such lien is lost. No other provision of the law is relied upon as sustaining this position, although it is claimed that none can be found in direct conflict with it. It seems to me that this construction rests more upon the language of the clause than the reason and purpose of it, considered with reference to the whole act. In the majority of instances, where the owner and debtor is insolvent, it would make the statute of no avail to the creditor, who furnished his labor or materials upon the security of the property.

I think that the statute, taken as a whole and construed with reference to the end to be obtained, and the mischief to be remedied by it, gives a lien in any case from the commencement of the labor or delivery of the material furnished, and that the filing of the notice as prescribed in section 2, is only a condition subsequent, which is necessary to be performed to preserve the lien for a greater period than three months from the completion of the building.

Section 3 of the act, in providing that in a certain contingency the lien shall cease "to exist at the expiration of one year after the completion of the building," by implication asserts that it does exist from the completion of the building. But the notice need not be filed for three months after such completion. True, it may be said, that "the completion of the building" is here referred to merely as an event or point of time in the transaction, from which to date the year given by the section for the enforcement of the lien. But admitting such to be primary purpose of the reference to this event or point of time, still, in asserting or declaring that the lien shall cease to exist in one year from such completion, the legislature have by implication, although not a necessary one, said that such lien does exist during such year.

Section 8, in providing that the lien shall extend to the lot on which the building is erected, if at the time of such erection the same was the property of the debtor, by necessary implication asserts that the lien exists at such time. Now "the time of the erecting of such building" is the time occupied or consumed in its erection from foundation to roof. If the lien exists during all or any portion of this period, it must also exist before the time limited for filing the notice, and cannot therefore be created by it. It may be a question whether this notice can legally be filed before the completion of the building. But it appears probable that such completion is here referred to merely as the event from which to compute and ascertain the point of time in the transaction within which the notice must be filed to preserve

the lien; and that such notice may be filed at any time after the performance of the contract for labor or material, and within three months from the completion of the building. Indeed, it may be that the act will permit notice of the lien to be filed day by day, as the work or delivery of material progresses, but it does not appear reasonable that the creditor is under any obligation to file a notice in any case before the completion of his contract to labor or furnish material. So, if the creditors' lien extends to the lot at any time during the erection of the building as provided by this section, it follows that it may exist before the filing of the notice.

Section 7, in providing that the "liens created in pursuance" of this act, not the notice, "shall have precedence over all other liens after the commencement of the building," declares in effect that for the purpose of preferring this lien to all others, it shall be deemed to exist from the commencement of the building. This indicates very plainly that it was the intention of the legislature, to so fasten these liens upon the property as not to permit any other class or description of creditors, under any circumstances, to subject the value of the labor and material furnished upon the faith of them, to the payment of their debts, unless it be with the express or implied assent of the mechanic or material men.

Taking the whole act together, and considering the manifest purpose of it, as well as the necessary consequence of a different construction, I am satisfied that notwithstanding the letter of the clause in section 1, referring to the filing of the notice, that a lien is given from the commencement of the work or delivery of material, upon the condition subsequent that the creditor files the notice prescribed in section 2, within the time limited therefor. A failure to perform this condition will doubtless work a loss of the lien. The omission, at least as against third persons, should be construed as an abandonment of the lien. The same effect would follow a failure to enforce the lien within the time prescribed in section 3.

Here the trustees succeeded to the rights of the bankrupt in this property at the date of the filing of the petition, and also to such rights, if any, as the general creditors had in it or could assert against it notwithstanding the bankrupt, and nothing more. If he had been a purchaser without notice, for a valuable consideration, under the same circumstances, the property would have passed by the sale, subject to the lien and the right of the lien creditor to do any act which he might have done but for such sale, necessary or required to perfect, preserve, continue or enforce his lien. Hotaling v. Cronise, 2 Cal. 64; Soule v. Dawes, 7 Cal. 576; Blauvelt v. Woodworth, 31 N. Y. 287; Foster v. Heirs of Stone, 20 Pick. 542.

In the course of the argument, counsel for the trustee cited and relied on the case In re Dey [Case No. 3,870]. The case arose under a statute of New Jersey, and decides that under that statute the lien did not attach from the time of doing the work or delivering the material, but from the filing of the claim for lien, and that the proceedings in bankruptcy having been commenced before such filing, no lien could be created by a subsequent filing. The statute of this state and that of New Jersey are not alike in some respects, but the difference is more verbal than otherwise, and the case is one in point. I do not adopt its conclusions, because I am not convinced by its reasoning and do not approve of its policy. To my mind there was no difficulty in holding that under the New Jersey statute the lien attached from the time the work was done and the material furnished. These acts and the indebtedness which arose from them were the meritorious cause of the lien—the reason for which the statute gave it—and not the mere technical act of filing the claim. The latter is only required as a means of giving notice to the world of what already exists—a lien upon the property—and the intention of the creditor to hold or continue it.

The case cited in the opinion from 1 C. E. Green, 150–161, does not, so far as I can perceive, necessarily support the conclusions. It may well be that a claim "not filed according to the requirements of the statute" does not constitute an "incumbrance on the premises," and still a lien attach upon the delivery of the material. For although the lien does attach from such delivery, yet if a claim is not filed within the term or to the effect prescribed, it would cease to exist and the filing of such claim would not constitute an "incumbrance on the premises."

It is not until after long and careful consideration, that I have declined to follow the ruling upon this question of the learned judge, who decided In re Dey [supra], and who has done so much to illumine the bankrupt act, and establish the practice under it.

My conclusion is, that the lien of U. & W. attached from the delivery of the material, and that the right given by the lien law of the state, to file a notice of intention to hold, not create, this lien, was not in any way impaired or affected by the subsequent proceedings in bankruptcy. The trustee took the property as the bankrupt held it, with this incumbrance.

The motion is denied with costs, as prescribed in rule 55.