RYAN DRUG COMPANY v. ALWIN ROWE and Another.[1]

December 17, 1896.

Nos. 10,412—(285).

**Mechanic's Lien—Who Entitled to.**

> R. was building a greenhouse upon his own land, and entered into an agreement with H. to furnish the necessary glass at a fixed price. H. purchased the glass of the R. D. Co., a wholesale dealer, upon credit, and in the regular course of business, and it was delivered to R. for H. R. used the glass in his greenhouse, and paid H. the agreed price. *Held*, that the R. D. Co. was not entitled to a lien for the value of the glass upon the building in which it was used.

Appeal by Ryan Drug Company from an order of the district court for Ramsey county, Kelly, J., denying a motion for a new trial. Affirmed.

*Thomas C. Fitzpatrick*, for appellant.
*Uri Lamprey*, for respondent.

COLLINS, J. For the purposes of trial, two actions were consolidated in the court below. One was an action brought by the Ryan Drug Company against Rowe, the landowner, and Heald, whose connection with the cause of action will be hereinafter stated, to foreclose a lien under the provisions of the law of 1889 (G. S. 1894, § 6229 et seq.); the other an action brought by Rowe against the Ryan Company to determine the adverse claim made to his land through a lien statement filed as provided in section 6236. On findings of fact the trial court ordered judgment against the company in each case, and it appeals from an order denying its motion for a new trial.

In the main, the facts were undisputed. Rowe was building a greenhouse on his premises near the city of St. Paul. Heald was in the commission business in the city, "making a specialty of the handling of green vegetables," and the Ryan Company was a wholesale dealer in glass and other articles in the same place. Heald knew Rowe, had dealt with him, and the year before had furnished him with glass for a greenhouse Rowe then erected. On learning

[1] Reported in 69 N. W. 468.

that the latter was building another house, Heald spoke to him about again furnishing the necessary glass, telling him to look around, see what he could do on prices, inform him (Heald), and, if he could make anything out of it, he would furnish the glass. Rowe, reported to Heald as to what figures he could obtain, and thereupon the latter stated he could do the same or better. Rowe then gave to Heald an order for the glass, agreeing upon the price to be paid for 100 boxes. Heald then bought the glass from the Ryan Company, as he had that furnished Rowe the year before, and wrote to him to come into the city, and get it. The latter sent an employé, who called on Heald, and the latter went with him to the office of the company, and directed that all of the glass be delivered to Rowe. A part of it was delivered to the employé, and the balance to Rowe in person, all taken by wagon to the greenhouse, and used in its completion. Heald's credit with the company was good, and the charge was made to him upon its books of account. Rowe receipted for 100 boxes of glass for Heald, when all had been delivered. It was shown upon the trial that this kind of glass was manufactured for greenhouses, and that Rowe paid Heald in full for the same soon after receiving it. There was a conflict in the testimony as to when Heald told the person with whom he dealt that the glass was designed for use in Rowe's greenhouse, the former testifying that nothing was said about the matter until after he had bought the glass (but before any part of it had been delivered), while the clerk was positive that this statement was made before the sale. But this of itself, and standing alone, is unimportant, as we look at the case.

Briefly stated, the findings were that Heald purchased the glass of the company upon his own individual credit; that Rowe bought of Heald, and paid him in full. We are of the opinion that the evidence warranted the findings.

The lien law (section 6229, supra) provides that:

"Whoever performs labor, or furnishes * * * material * * * for the erection * * * of any house * * * or other building * * * by virtue of a contract with, or at the instance of, the owner thereof, or his agent, trustee, contractor or sub-contractor, shall have a lien * * *"

To succeed in either of these actions it was incumbent on the company to bring itself within the terms of this statute.

66 M.—31

Its counsel zealously contends that the case of Emery v. Hertig, 60 Minn. 54, 61 N. W. 830, is directly in point, and is conclusive in favor of his client. We are not agreed to this. The facts were, in that case, that the Breen Company and T. M. Breen were operating a stone quarry, and agreed with Hertig to furnish polished granite columns, to be used in the construction of a bank building. The Breens quarried the stone, but they had no polishing machinery, and the polishing was done by Emery, under a contract with the Breens. Hertig paid the latter, but they failed to pay Emery, and it was held that the latter had a lien for the contract price of his work and labor. It will be seen that Emery's claim was for work and labor, which Hertig knew would have to be done and performed after the Breens had taken the material out of their own quarry, and that such columns are always gotten out, and the finishing is done specially and for some particular structure. Granite columns, rough or polished, as Hertig well knew, are never kept on sale in the market. Glass for greenhouses and for other purposes is, and that in question was. It is a common article of merchandise. And in the Emery case attention was called to the fact that granite columns are not placed on the market generally, to be sold in the course of trade like merchandise. If Rowe had contracted with Heald to furnish some article for the greenhouse which would have to be prepared specially for it, Rowe having knowledge of the fact, instead of agreeing that Heald should furnish a common article of merchandise, the cases might have some similarity. As the facts are, they have not.

The company sold and delivered a common article of merchandise, already in the market for sale, to a person who was not a builder, nor had he a contract for the erection of the building in which the article was used. This person had already agreed to furnish that particular article to the owner of the land, who was erecting his own building. That this owner took the glass from the store of the company can make no difference, for clearly that delivery was to Heald, the purchaser. If the latter had been a dealer in glass, it is manifest that the company would have no right to a lien, unless we are to disregard what was said under the old law in Merriman v. Jones, 43 Minn. 29, 44 N. W. 526. The rights of the company as a vendor of material cannot be tested by an inquiry into the kind of

merchandising the vendee happened to be engaged in when the purchase was made. It did not sell or furnish the glass by virtue of a contract, or at the instance of the landowner, Rowe; nor, within the meaning of the statute, did it sell or furnish the same to his contractor or subcontractor. The sale to Heald cannot be distinguished from an ordinary sale in the regular course of business, and to a regular customer.

Order affirmed.

MITCHELL, J. I concur. It is sometimes difficult, under our present statute, to determine when the vendor of material, which is in fact used in the construction of a building, is, and when he is not, entitled to a lien. But I take it to be clear that in providing that one who furnishes material for the construction of a building by virtue of a contract with the owner or his agent, contractor, or subcontractor, the legislature never intended to give a lien to a dealer who sells, on the personal credit of the purchaser, a common article of merchandise, generally kept in the market, to one who is neither the owner of the building nor a contractor or subcontractor under the owner for its construction, merely because the article is bought by the purchaser for the purpose of selling it again to the owner of the building, and the article is afterwards in fact bought by the owner, and used by him in the structure. In my opinion, the evidence justified the court in finding that these were the facts in the present case.