In re KERBY–DENNIS CO.

(Circuit Court of Appeals, Seventh Circuit. June 14, 1899.)

No. 602.

1. BANKRUPTCY—PRIORITY OF LIENS—LABOR CLAIMS.
Where a statute of the state (3 How. Ann. St. Mich. §§ 8427a–8427p) creates a lien in favor of employés performing labor in the manufacture of lumber, but provides that the debt or claim shall not remain a lien on the product unless a statement thereof is filed within 30 days, and action begun within 3 months, holders of such liens, perfected according to the statute, against the estate of the employer in bankruptcy, are entitled to payment in full out of the proceeds of the property affected, in preference to claims for labor of the same kind which have not been preserved as the statute directs, although both classes of claims are equally within the description of claims for "wages," as to which the bankruptcy act declares that they shall "have priority and be paid in full out of bankrupt estates." Bankruptcy Law, § 64b.

2. SAME.
A lien for the wages of labor created by such a statute, and preserved in force according to its directions, is not dissolved by an adjudication in bankruptcy against the employer, under section 67f of the bankruptcy act (30 Stat. 564), providing that "liens obtained through legal proceedings

against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt."

**8. SAME—PRESERVATION OF LIENS—CONSTRUCTION OF BANKRUPTCY ACT.**

A statutory lien for the wages of labor is not dissolved or annulled by proceedings in bankruptcy against the employer, merely because such liens are not expressly preserved by the bankruptcy act. On the contrary, the intention of the bankruptcy act is to protect all liens, whether arising by contract or by statute, except only such as are expressly declared to be annulled or invalidated.

In Bankruptcy. Review of an order of the district court of the United States for the Eastern district of Wisconsin.

T. W. Spence, for petitioners.

Before BROWN, Circuit Justice, and WOODS and JENKINS, Circuit Judges.

JENKINS, Circuit Judge. The Kerby-Dennis Company, a corporation under the laws of the state of Wisconsin, and doing business at Marinette, in that state, was duly adjudged a bankrupt in the district court of the United States for the Eastern district of Wisconsin, upon a petition filed November 1, 1898, being at the time the owner of a large amount of logs, posts, ties, and shingles, upon and in the production of which labor had been performed within three months prior to the filing of the petition in bankruptcy by a number of laborers, including the petitioners. The labor claimants are divisible into two classes,—the one class comprising those who on the 27th of October, 1898, filed claims for liens with the clerk of the circuit court of Alger county, in the state of Michigan, where the product was situated, for the amount of the indebtedness due them, respectively, for work and labor, and who thereafter prosecuted suits against the bankrupt corporation, and seized the property upon which the labor had been performed. After the appointment of a trustee in the bankruptcy proceedings, by stipulation, the property covered by the labor liens, and attached in the suits in the courts of Michigan, was turned over to the trustee in bankruptcy, without prejudice to the validity and priority of such labor lien claims, which were continued and made operative upon the proceeds of the sale of the property so turned over. The other class of claimants is composed of those who had performed like services in the production of the property, but had failed to file claims for liens under the statute of the state of Michigan. That statute provides that any person performing labor or services in manufacturing lumber or shingles "shall have a lien thereon for the amount due for such labor or services, and the same shall take precedence of all other claims or liens thereon." The statute also provides that any such debt, demand, or claim shall not remain a lien on any of the mentioned products unless a statement thereof in writing, made under oath by the claimant or some one in his behalf, shall be filed in the office of the clerk of the county in which such labor or service was performed, which statement of lien shall be filed within 30 days after the completion or last day of such labor or service; and that any sale or transfer of the products upon which

the lien is claimed during the time limited for the enforcement of the same shall not affect the lien, but the lien shall remain and be enforced against such products, in whosesoever possession the same shall be found. ·The statute also provides that the lien may be enforced by attachment against any of the products in the designated courts of the state, and that such lien claims shall cease to be a lien upon the property named in such statement unless suit be commenced within three months after the filing of the statement for lien.    3. How. Ann. St. Mich. §§ 8427a–8427p.

The referee in bankruptcy on April 25, 1899, directed the trustee to apply the fund to the payment of a pro rata dividend upon all the claims for labor and services approved and allowed by the court, entitled to priority under the provisions of subdivision 4, par. b, § 64, of the national bankruptcy act, "without distinction or preference as to whether said labor claims.had secured or attempted to secure liens upon any of the property of said bankrupt prior to the adjudication in bankruptcy, under the provisions of sections 8427a–8427p of Howell's Annotated Statutes of the State of Michigan."    The district court, on the 23d day of May, 1899, reversed that order, and adjudged that the claims of those who had filed their statements of liens were entitled to priority of payment out of the proceeds of the property covered thereby, as against the claims of laborers who had no liens under any state law or otherwise upon the property, and that the proceedings in the state court to secure the liens were unaffected by the proceedings in bankruptcy, and entitled to recognition by the bankruptcy court with the same force and effect as though the same had been enforced in the courts of the state.    94 Fed. 818.    Whereupon, on the 3d day of June, 1899, the claimants so postponed filed their original petition in this court, asking for a review and reversal of the order of the district court, and for instruction to the trustee to apply the proceeds of the property without distinction or preference.

The claims secured by labor liens amount to about $7,000; the like claims not so secured amount to about $8,000.    The question presented is whether these labor liens secured by the statute of Michigan should be preferred to the claims for like work not so secured.    We cannot doubt that the statute of Michigan gives to a laborer a lien for his services which results from the performance of, and exists from the commencement of, the work, and is not created by the proceedings to enforce the lien, but only continued or secured thereby.    The proceedings under the statute are merely the means for the preservation and enforcement of a pre-existing lien given by the statute, and arising from the performance of the service.    In re Hope Min. Co., 1 Sawy. 710, Fed. Cas. No. 6,681.    The statute itself clearly demonstrates this.    It provides that the claim or demand, shall not "remain a lien" upon the product, unless a statement of the claim is filed, and proper suit instituted, within a certain period.    It speaks a lien preexisting the statement of claims and the suit.

It is insisted however that the bankruptcy act does not preserve these liens.    It is said that to hold them valid would be in antagonism to subdivision f of section 67 of the act, which provides "that all levies, judgments, attachments or other liens obtained through legal

proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same and shall pass to the trustee as a part of the estate of the bankrupt," etc. But it is to be observed that the lien in the case before us was not obtained through "legal proceedings." It is a creature of the statute arising from, and immediately upon, the performance of labor. The legal proceedings contemplated by the statute do not create a lien, but enforce a lien already existing.

It is also urged that since the bankruptcy act does not, as did a former bankruptcy act, expressly reserve liens of this character, therefore they are not entitled to protection. It is possible, perhaps, for congress to interfere with vested rights, and to impair obligations of contracts; but such legislation would be opposed to equity and good conscience, and the intention of congress so to enact cannot be presumed, in the absence of clear and unmistakable expression. We find in the bankruptcy act no such design. To the contrary, we find provisions, like that quoted, which direct that certain liens shall be invalid. For instance, by section 67a, "claims which for want of record or for other reasons would not have been valid liens, as against the claims of the creditors of the bankrupt, shall not be liens against his estate"; and, by section 67c, "a lien created by or obtained in or pursuant to any suit or proceeding at law or in equity * * * shall be dissolved," etc. The act also provides (section 67d) "that liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary, in order to impart notice, shall not be affected by this act." It is thus clear to us that the design of congress was to protect all liens, whether arising by contract or by statute, and only to avoid those which are in fraud of the act, and those which have been secured by, and arise from, legal proceedings within the limited time specified before the bankruptcy. "Expressio unius, est exclusio alterius." We cannot indulge the presumption that congress intended to avoid a lien secured by the act of labor, and preserved and continued in force only when legal proceedings were instituted within a specified time. Such construction would avoid all mechanics' liens, and all the liens of laborers, which the laws of the various states have for years sought to protect and to prefer.

The question is not affected by the provisions of section 64, subds. a, b. That section directs the order of distribution of the estate after the assets have been marshaled and the liens discharged, and provides for the priority of payment of labor claims not otherwise secured. It is true that the petitioners here, with respect to the character of their services and labor, stand equal in equity to the claims of those which were allowed preference by the decision of the court below. The apparent inequity, in now denying equality, results, however, not from the bankruptcy act, but from their own omission to comply with the requirements of the local law. Both of

these classes of laborers had liens upon the product upon which their labor was expended. The one class preserved their liens by proper proceedings, which the statute giving the lien rendered imperative for its continuance. The other class omitted so to do, and therefore, by force of the statute which created the right, the lien is gone forever. We are of opinion that the decree of the court below is correct, and must be affirmed, and that the prayer of the petitioners should be denied. The clerk will certify the decision to the court below.