### In re EMSLIE et al.

(District Court, S. D. New York. January 4, 1900.)

1 MECHANICS' LIENS—SUFFICIENCY OF NOTICE.
　　Where the mechanic's lien law of the state (Laws N. Y. 1897, c. 418,
§ 9, subd. 6) provides that a notice of such lien, to bind the property, shall
state, among other things, the time when the first and last items of work
were performed, or materials furnished, a notice which wholly omits to
give these dates is insufficient, although the statute also provides that a
"substantial compliance" with its provisions shall be sufficient for the va-
lidity of the lien.

2. BANKRUPTCY—DISSOLUTION OF LIENS—MECHANICS' LIENS.
　　Where, under the laws of the state, a mechanic's lien is created and made
to attach to the property only upon the filing in the office of the county clerk
of a notice claiming such lien, and not from the doing of the work or fur-
nishing the materials, a lien acquired by the filing of such a notice within
four months prior to the filing of a petition in bankruptcy against the in-
solvent debtor will be dissolved by his adjudication as a bankrupt, being
a "lien obtained through legal proceedings," within the meaning of Bankr.
Act, § 67f; and a proceeding in a state court for the foreclosure of such
lien should be stayed.

3. SAME.
　　Where the mechanic's lien law of the state provides that the lien shall
attach from the filing of a notice claiming such lien, which may be done at
any time during the progress of the work, a lien acquired by a notice filed
two or three months after the completion of the work is not within the
terms of Bankr. Act, § 67d, providing that "liens given or accepted in good
faith and not in contemplation of or in fraud upon this act, and for a pres-
ent consideration, shall not be affected by this act," is a lien but for an
antecedent debt, and will be dissolved by the adjudication of the debtor as
a bankrupt within four months after the filing of the notice.

In Bankruptcy.

Charles H. Young, for petitioner.

T. V. W. Anthony, for trustee.

BROWN, District Judge. This is an application to stay a suit pending in the state court, brought by Thomas Smith to foreclose a mechanic's lien for $1,700 due under a contract with the bankrupts, filed on April 28, 1899. On the next day, April 29th, the bankrupts made a general assignment for the benefit of their creditors; on May 29th an involuntary petition in bankruptcy was filed against them, and bankruptcy was adjudged on August 17th. On August 16th the suit now sought to be stayed was brought to foreclose the above lien, claiming $1,618, with interest from February 11, 1899, to be due.

On a recent application of the same nature, a stay was granted (In re Emslie [D. C.] 97 Fed. 929) on the ground that the lien acquired by filing the notice was annulled by section 67f. A further question is here raised as to the sufficiency of the notice to create a lien, which requires a more particular examination of the New York statute and of the terms of the notice of lien.

The bankrupts in June, 1898, had contracted with one Zabriskie to build a dwelling house at Sands Point for $17,319. On July 6, 1898, Smith contracted with the bankrupts to do the mason work and furnish mason's materials therefor for the sum of $6,168. The contract was subsequently performed, together with extra work to the amount of $150. For this Smith was paid by the bankrupts the sum of $4,700 on account, leaving unpaid as now appears the sum of $1,618. In the notice of lien filed April 28, 1899, Smith states "that all the work and material for which the claim is made, has been actually performed or furnished," and that a lien is claimed under chapter 342 of the Laws of 1885 of the State of New York; it also states that the work was done and the materials supplied "under contract" with the bankrupts, but does not state when the contract was made or completed, or when the last work was done or the last materials furnished, nor the agreed price or value of the work or materials to be performed or furnished; but only that "there remains due and unpaid the sum of $1,700."

The petition of the trustee for a stay, alleges that the last materials were furnished and the last work performed on February 11, 1899, and that there remains due from Zabriskie to the bankrupts upon the contract of the latter, the sum of $3,319. The answer of Smith to the petition avers that the work was all performed and materials furnished, including extra work, on February 11, 1899, on which day he received a payment of $700, leaving a balance of $1,700, for which sum he became "entitled to a lien on said February 11, 1899, * * * more than four months prior to the alleged bankruptcy herein."

The answer further alleges that Smith has paid all workmen for all the labor and wages under said contract, and has satisfied and discharged eight liens, which were filed prior to his lien and for which he was legally liable, amounting altogether to $551.66, to which he

claims to be subrogated; and that the lien obtained by him was obtained under chapter 418 of the Laws of 1897.

1. It is objected that the notice filed by Smith was insufficient to create a lien, because it does not state the time when the first and last items of work and materials were furnished. The law governing the subject is found in chapter 418 of the Laws of 1897. Section 120 of that act repeals section 4 of the act of 1885, which prescribed the contents of notices filed under the act of 1885. The notice claimed a lien under the act of 1885. This false reference would be immaterial, if the notice in fact substantially conformed to the requirements of the act of 1897; since section 22 of the latter act provides that "a substantial compliance with its several provisions shall be sufficient for the validity of a lien."

Both acts (section 4, Laws 1885; section 9, subd. 4, Laws 1897) required the notice to state "the agreed price or value of the labor performed or to be performed, or materials furnished or to be furnished," which, as above stated, are omitted in Smith's notice. The act of 1897, moreover, introduced a new requirement under a separate subdivision, requiring a statement of, "6. The time when the first and last items of work were performed and materials were furnished," and this also is wholly omitted.

A compliance with this last requirement would subserve the useful purpose of showing on the face of the notice whether it was filed within the lawful period of 90 days or not (section 10); and it would thus tend to check the filing of fictitious liens after that period. Whatever the actual purpose of subdivision 6, the disregard of this new requirement inserted in the act of 1895 cannot be treated as immaterial. The fact that this new requirement was enacted shows that it was deemed important. Where the notice shows an endeavor to comply with all the different requirements of the act, any mere informality or slight variations will be disregarded. Ringle v. Iron Works, 149 N. Y. 439, 44 N. E. 175. But this cannot apply to a total nonobservance of one of the distinct and express statutory requirements. Article 22 itself shows that there must be at least a "substantial compliance with the several provisions of the statute" in order to give validity to the lien. Subdivision 6 of the act of 1897 is one of the distinct and several provisions of section 9; and that section provides that "the notice of lien shall state" what is required in the succeeding seven subdivisions. For wholly disregarding the sixth requirement I must, therefore, hold the notice of lien invalid. Luscher v. Morris, 18 Abb. N. C. 67; Close v. Clark (Com. Pl.) 9 N. Y. Supp. 538; Brandt v. Verdon (Com. Pl.) 18 N. Y. Supp. 119; Foster v. Schneider (Sup.) 2 N. Y. Supp. 875.

It is unnecessary to consider the effect of the further omission to state "the agreed price or value of the labor and materials furnished, or to be furnished" required by subdivision 4 of section 9, as this omission is of the same nature as the former.

2. Irrespective of any insufficiency in the notice filed, it was recently held by me in the case of In re Emslie (D. C.) 97 Fed. 929, that a preference for an antecedent debt, acquired within less than four months of the filing of the involuntary petition, through the

New York mechanic's lien law, was null and void under section 67 of the bankrupt act. As that question has been again fully argued, and the grounds of the former decision seem not to have been fully understood, I will state them somewhat more fully.

The mechanic's lien law of the state of New York is materially different from that of most of the states as respects the time when the lien arises. In most other states, as in Massachusetts, New Jersey, Pennsylvania, Wisconsin, Ohio, Michigan, Missouri, Nebraska, Maryland and others, a lien is created directly by the statute itself from the time the building is commenced or the work or materials furnished, and from the very act of doing the work, without any further act or proceeding whatever on the part of the lienor. A subsequent notice of the lien is, indeed, required to be filed in those states; but that is not for the purpose of creating the lien, but only to prevent its loss afterwards, and to give notice of it to the public. The lien itself, under that system, exists anterior to the notice and independently of it. Those liens arise as the work is done; they are strictly contemporaneous liens; they are given by the statute, and received by the creditor, "for a present consideration" within the spirit certainly, if not within the exact letter, of section 67d. They are, moreover, in no way in fraud of the bankrupt act, nor contrary to its intent or policy, because as stated by Deady, J., in Re Coulter, 2 Sawy. 42, 6 Fed. Cas. pp. 637, 638 (No. 3,276):

"The lien is only equivalent to the additional value which the creditor has by this means given the property of the debtor, and therefore does not diminish the assets of the latter applicable to the payment of his pre-existing debts."

Such liens stand, therefore, upon the same footing as mortgages, pledges, or any other security given upon a new and full consideration, and are in no way subject to the condemnation of the bankrupt act, as preferences of antecedent debts. It was upon these grounds that a lien acquired under the statute of Michigan was upheld in Re Kirby-Denis (D. C.) 94 Fed. 818; Id., 36 C. C. A. 677, 95 Fed. 116.

Liens like the present, arising under the New York mechanic's lien law, are in all these respects fundamentally different.

(a) This lien was not acquired at the time of doing the work, nor until the notice was filed, from two to three months afterwards. By the New York statute (section 3) the lien exists only "from the time of filing the notice." Under this statute it has long been settled that the filing of the notice originates the lien; and that up to that time a mechanic has no greater right or equity than any other creditor; and that the notice when filed has no retroactive effect. Payne v. Wilson, 74 N. Y. 348; McCorkle v. Herrman, 117 N. Y. 297, 22 N. E. 948; Stevens v. Ogden, 130 N. Y. 182, 29 N. E. 229. The New York statute (section 10) does, indeed, expressly permit the notice to be filed "at any time during the progress of the work and the furnishing of the materials," and when that is done, the lien, as I understand, is fed by the work done under it, so as to make it in effect a contemporaneous lien upon "a present consideration," within section 67d, upon which a recovery could be had of whatever might be due at the time of trial. Ringle v. Wallis Iron Works, 85 Hun, 279, 32 N. Y. Supp. 1011. But in the present case that course was

not pursued. The creditor by voluntarily waiting from two to three months until after his work was done and the debt due, took the risks incident to his voluntary delay. The claim of the lienor in his answer that he had a lien on February 11th is without foundation.

(b) For the same reasons this lien was not for "a present consideration," so as to fall within the saving clause of section 67d; it was only for an antecedent debt, which that clause plainly intends to exclude.

(c) This lien, moreover, instead of being created by the statute alone and by the mere fact of doing the work, and without any other "proceeding" on the creditor's part, could only be obtained, as it was in fact obtained, by the creditor's own adverse proceeding against the debtor's property, by invoking the statutory remedy of a proceeding in rem, provided by the New York lien law for the collection of building debts.

(d) The lien, if upheld, will by so much deplete the debtor's assets, and create a preference for an antecedent debt in favor of a single creditor over all others.

(e) Such a preference violates the manifest purpose and policy of the bankrupt act, the fundamental law of which is equality of distribution among creditors.

(f) A voluntary preference of an antecedent debt by an insolvent within four months of bankruptcy is a fraud upon the act. Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481. An involuntary proceeding which accomplishes the same result, should be equally condemned.

(g) Section 67d, in saving liens which are for "a present consideration" and "not in fraud of the act," by necessary implication condemns liens like the present, which are not for "a present consideration, and which are in fraud of the act, by creating preferences.

(h) This lien was obtained through a "legal proceeding," within the meaning of section 67f. The words "legal proceeding" are not terms of art. They have no strictly technical meaning, but are here used in a general sense. In their narrower meaning, they signify a suit or proceeding at law or in equity. But in a wider sense, they embrace every proceeding established by law for acquiring a right, or enforcing a remedy. In this sense, the foreclosure of a mortgage by advertisement under the statute, is as truly a "legal proceeding" as a foreclosure by a suit in equity; the one is a statutory remedy out of court; the other, a remedy in and through the court. Both are equally legal proceedings. If there were doubt in which sense the expression "legal proceedings" is used in section 67f, the wider sense should be adopted, "Ut res magis valeat quam pereat," that the main object of the act, viz. equality among creditors, may be saved and not lost.

The mechanic's lien law of this state provides a statutory remedy, by a proceeding in rem, for the collection of building debts. It consists of two legal steps; one, for acquiring the lien, and thereby subjecting the property to the jurisdiction of the court; and the other, for foreclosing the lien as in actions of foreclosure in equity. Code Civ. Proc. §§ 3399–3401. Such is the action the court is here asked to stay. The two steps in the statutory proceeding are in-

dispensable to each other; each without the other would be worthless. They are manifestly but parts of one entire proceeding or remedy, having in view the single purpose of appropriating the property charged to the payment of the debt. The first legal step, filing the notice of claim, by creating the lien, operates in effect as process; it seizes upon the property, like an attachment, and subjects the res to the jurisdiction of the court; the second step applies it to the debt by foreclosure. The first step in acquiring the lien, is the indispensable foundation of all that follows; and the entire proceeding, considered as a whole, and as a single remedy provided by law, is as much a "legal proceeding" for the collection of a debt, as an ordinary suit prosecuted to judgment and execution for a similar purpose. There is no doubt, as it seems to me, that a preference for an antecedent debt sought to be obtained in this way against an insolvent, by notice of lien and suit and judgment thereon, would, if not discharged before sale, etc., be an act of bankruptcy under section 3 (3), as suffered or permitted through "legal proceedings," since the "preference" could not be consummated, or realized, except through "legal proceedings" in its narrowest sense, i. e. by proceedings in court; and if so, the preference thus acquired is void; as an assignment within section 3 (4) is not only an act of bankruptcy, but void as against subsequent bankruptcy proceedings within four months, without any express provision to that effect. In re Gutwillig (D. C.) 90 Fed. 475; Id., 34 C. C. A. 377, 92 Fed. 337; West Co. v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098.

The bankrupt act of 1898 is much more sweeping than that of 1867, and shows unmistakably, as it seems to me, its intent to treat voluntary and involuntary preferences alike, and to annul both within the period of four months prior to bankruptcy. There is not the least reason in principle for any discrimination between them; if one is prohibited, the other should be; since the resulting inequality of distribution is the same in both. See In re Vaughan (D. C.) 97 Fed. 561. Section 3, accordingly, as above observed, makes a preference consummated through any "legal proceeding" suffered by the bankrupt an act of bankruptcy unless discharged.

In the case of In re Gutwillig, 34 C. C. A. 377, 92 Fed. 337, Wallace, C. J., referring to the provisions of section 67 says, page 339, 92 Fed., and page 379, 34 C. C. A.:

"These provisions manifest unmistakably the intention of congress not only not to permit preferences to be acquired upon the bankruptcy of a debtor when he is about to become a bankrupt, but also to annul all dispositions of his property, except to innocent purchasers, which will defeat the rights of creditors to a distribution by the instrumentalities and according to the scheme of the bankrupt act. * * * This clause must be interpreted in a sense which harmonizes with the general intent of the section as gathered from the other clauses."

(j) The intent of the act to avoid all preferential liens, voluntary or involuntary, is further shown by what is saved, as well as by what is expressly annulled. Only those are saved (section 67d) which (1) are obtained or accepted upon "a present consideration"; that is, such as do not deplete the estate, and hence do not presumptively work any preference; and which at the same time (2) are "not

98 F.—46

in fraud of the act"; that is, do not work a preference, or defraud creditors of their equal rights under the act. Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481. This lien violates both these conditions. It is not saved by section 67d or any other provision of the act. Sections 60 and 67 embrace both voluntary and involuntary preferences; and the term "legal proceedings" in section 67f should be construed in the broad sense, as including a statutory proceeding to recover antecedent debts, which like this is partly in court and partly out of court.

It is urged that the words "legal proceedings" in section 67f should be held to mean the same thing as the words "any suit or proceeding at law or in equity" in section 67c. On the contrary, since it is patent from the general scope of section 67f that it was intended to be much broader in its application than section 67c, the use of the broader words "legal proceedings" in section 67f should be taken to have been deliberately chosen, so as not to confine its operation to preferences acquired through proceedings in court alone, but in order to effect with other sections a complete and harmonious execution of the bankrupt act, by avoiding all intentional preferences of antecedent debts, however acquired, whether voluntarily by the bankrupt's own act, or involuntarily by any adverse proceeding authorized by law and resorted to by the creditor for the same end.

As respects the hardships referred to, the New York statute seems itself to furnish a sufficient answer, in permitting the notice of lien to be filed "at any time during the progress of the work" for labor or materials "furnished or to be furnished." Sections 9, 10. The meritorious claims of workmen and others for their wages, are liberally provided for in the bankrupt act by a system of its own, section 64 (4); and if contractors or merchant dealers in building materials forbear to acquire contemporaneous liens, as they may do, by filing the early notices which the statute permits, and if by such laches, or by giving a personal credit for a season, they permit their claims to fall within the class of antecedent debts, I do not perceive any general principle of equity, or anything in the policy of the bankrupt law, that discriminates in their favor, or entitles them to a preference over other creditors.

The stay is granted.