### In re SLOMKA et al.

#### (District Court, S. D. New York. October 9, 1902.)

**1. BANKRUPTCY—CLAIMS—PRIORITY—WAGES.**

    Bankr. Act, § 64 B (4), relating to the priority of claims, authorizes priority for wages due to workmen, clerks, or servants, earned within three months before the date of the commencement of the proceedings; and subdivision 5, for debts owing to any person who by the laws of the states or United States is entitled to priority. *Held* that, where wage claimants were entitled to liens by virtue of state law, they were entitled to priority under subdivision 5, though the wages were not earned within three months before the date of the commencement of the bankruptcy proceedings.

**2. SAME—WAGES—LIENS—STATE STATUTE.**

    Laws N. Y. 1897, c. 624, § 29, declares that, in all distributions of assets under all assignments made in pursuance of the act, wages owing to employés of the assignor at the time of the execution of the assignment, or wages for services rendered within a year prior thereto, shall be preferred before any other debts. *Held*, that such statute created a lien in favor of wage claimants on the fund in the hands of the assignee produced from the assigned property, which lien attached to the fund when transferred by the assignee to a trustee in bankruptcy.

In Bankruptcy.

Joab H. Banton, for trustee.

Isidore Witkind, for labor claimants.

ADAMS, District Judge. A question whether certain labor claims should be allowed priority is certified for my opinion.

The facts had been agreed upon as follows:

"I. On the 14th day of April, 1900, and for some time prior thereto Jacob Slomka, Max Slomka and Adolph Slomka, as partners in business under the firm name of S. Slomka's Sons & Company, were engaged in the manufacture of sporting goods, at the City of New York, Borough of Manhattan.

"II. On said 14th day of April, 1900, said firm of S. Slomka's Sons and Company, executed and delivered a general assignment for the benefit of creditors to one Louis Stern, as assignee, without preferences, in accordance with the laws of the State of New York, and the deed of assignment was regularly filed, and recorded on said day in the office of the Clerk of the County of New York.

"III. Said assignee immediately thereafter took possession of the firm's assets and converted the same into cash in accordance with orders from the New York Supreme Court.

"IV. At the time of the suspension of business by said firm in said month of April, there were due to a number of the employés of said firm two weeks' wages earned within two weeks next preceding the execution, and filing of said deed of assignment, that is, from April 1st to April 14th, 1900, inclusive, aggregating about Two hundred ($200.00) dollars.

"V. That prior to the filing of the petition in bankruptcy hereinafter stated said labor claimants and each of them filed with said assignee an itemized and duly verified statement of their said account for allowance and payment by said assignee as preferred labor claims under the provisions of Section 29, Chapter 624 of the New York Laws of 1897. And that said claims were passed upon by said assignee and allowed in full as preferred labor claims.

"VI. That on the 16th day of July, 1900, a petition in involuntary bankruptcy was filed against said partnership as well as against the individual members of said firm and on the 4th day of October, 1900, said firm and the individual members thereof were adjudicated bankrupts; a trustee was appointed, and the assignee under the orders of this Court returned to the trustee herein the sum of about Twelve hundred ($1,200) dollars then in his possession and realized from the sale of the assets of said bankrupts and from collections of outstanding accounts due said bankrupts.

"VII. That during the month of December, 1900, the labor claimants herein filed with the Referee in Bankruptcy proofs of debt of their respective claims, for amounts set opposite their names to' wit:

"Adolph Rosenberg, $6.00; Louis Slomka, $26.00; Louis Brisman, $20.84; Jacob Lowenthal, $8.33; Lena Frank, $9.33; Samuel Richter, $38.28; Freda Slomka, $8.00; Samuel Lebin, $10.85; Joseph Adler, $6.67; Pinkus Ginsberg, $10.00; Alter Friedman, $5.83; Israel Schorr, $10.00; Max Gutman, $3.37 and a few others, and claim preference therein under the U. S. Bankruptcy Law.

"VIII. That Section 29, Chapter 624 of the New York Laws of 1897, is in words as follows:

"'In all distribution of assets under all assignments made in pursuance of this Act, the wages or salaries actually owing to the employés of the assignor or assignors at the time of the execution of the assignment for services rendered within one year prior to the execution of such assignment, shall be preferred before any other debt; and should the assets of the assignor or assignors not be sufficient to pay in full all the claims preferred, pursuant to this section, they shall be applied to the payment of the same pro rata to the amount of each such claim.'"

"IX. That said firm was on the 14th day of April, 1900, in fact, insolvent.

"X. That all the claims of the above named creditors have been proved against the bankrupts' estate, and that the trustee herein now has in his

117 F.—44

possession the sum of about Nine hundred sixty-two and $^{03}/_{100}$ dollars ($962.03).

"XI. That the wages upon which said claims are based were not earned within three months before the date of the commencement of this proceeding in bankruptcy.

"Dated September 26, 1902."

The Referee has reported as follows:

"As Referee I find that the wages were earned prior to the 14th of April, 1900; that the bankruptcy proceeding was instituted, July 16th, 1900, more than three months subsequent thereto; that the wages were not earned within three months before the date of the commencement of the proceeding.

"As a matter of law I conclude that Section 64b (4) is exclusive of Section 64b (5) and these creditors have no lien under Section 67 of the Bankruptcy Law, and the claims should not be allowed in full as debts having priority but that these creditors should take pro rata with the other creditors of the bankrupts.

"Annexed hereto is the order which has been entered in this proceeding controlling the above claims.

"And the said question is certified to the Judge for his opinion thereon. See 1 Am. Bankr. R. 234.

"Dated, at the City of New York, the 27 day of September, A. D., 1902."

In re Rouse, Hazard & Co., 1 Am. Bankr. R. 234, 33 C. C. A. 356, 91 Fed. 96, relied upon by the Referee, decided by the Circuit Court of Appeals, for the Sixth Circuit, Jan. 3, 1899, was a case where a priority for labor claims was allowed by the District Court but disallowed on appeal for the reason that Congress having provided for wages earned within three months before the date of the commencement of the proceedings, not to exceed $300 in amount to each claimant (section 64b [4]) there could be no enlargement, either as to time or amount, notwithstanding the same section, in the next paragraph, provided for an allowance of debts owing to any person who by the law of the states or the United States should be entitled to priority (section 64b [5]).

The claimants here insist that the case is governed by the principle of the case In re Coe, 6 Am. Bankr. R. 1, 48 C. C. A. 538, 109 Fed. 551, decided by the Circuit Court of Appeals of the Sixth Circuit June 4, 1901. That was a case where the Ohio Statute, which was in force at the time, provided:

"In all cases where property of an employer is placed in the hands of an assignee, or receiver, or trustee, claims due for labor performed within the period of three months prior to the time of such assignee, receiver or trustee is appointed shall be first paid out of the trust fund in preference to all other claims against such employer, except claims for taxes and costs of administering the trust."

There the wages were earned within three months preceding the 27th day of August, 1898. The petition in bankruptcy was filed on the 24th day of December, 1898, therefore the wages were not earned within three months before the date of the commencement of the proceedings in bankruptcy. The District Court (Northern District of Ohio) disallowed priority of the claims. The court on appeal reversed the decision and allowed the claims on the ground that the liens were not obtained through legal proceedings and therefore not avoided by the proceedings under section 67c nor were they null and void

under section 67f, but liens created by the state statute upon the performing of the labor and the placing of the employer's property in the hands of a receiver, not divested by the bankruptcy proceeding, leaving the fund turned over by the receiver in the state court to the bankruptcy court, chargeable with the liens which should be recognized and enforced in the bankruptcy court. In support of the decision, the court cited In re Kerby-Dennis Co., 2 Am. Bankr. R. 402, 36 C. C. A. 677, 95 Fed. 116, decided by the Circuit Court of Appeals for the Seventh Circuit, June 14, 1899, where it was held that labor liens created under a Michigan statute would be sustained in the bankruptcy court and given a preference over equally meritorious labor claims which had not been established in the state court, notwithstanding the claims were all covered by section 64b (4) of the Bankruptcy Act. In re Kerby-Denis·Co. (D. C.) 94 Fed. 818. The court in Re Coe also cited In re Emslie, 3 Am. Bankr. R. 282, 516, 42 C. C. A. 350, 102 Fed. 291, decided by the Circuit Court of Appeals for this Circuit May 24, 1900, affirming a decision of this court holding that mechanics' liens, duly filed, were not dissolved by section 67 of the Bankruptcy Act. It will be seen that the cited cases do not decide the controversy here and In re Rouse, Hazard & Co. and In re Coe stand apparently opposed to each other on the question involved. The former case was followed in the Eastern District of Pennsylvania by Judge McPherson in Re Shaw (D. C.) 109 Fed. 782, decided June 22, 1901, where the direct question now involved was before him and he held that to allow the wages claimed as debts under section 64b (5) would in effect either wipe out section 64b (4) or furnish two rules of construction for deciding how much should be allowed to a claim for wages in priority and that therefore the word "debts" in paragraph 5 should be held not to cover wages claims. This ruling is inconsistent with In re Coe, which sustained, under paragraph 5, a wages claim more than three months old. The latter case was apparently not reported at the time of Judge McPherson's decision and not before him.

There being no direct authority in this Circuit, I am inclined, if these claims are liens, to follow In re Coe, for the reason that wages claims are, with certain limitations, universally protected by legislation in this country and I am not satisfied that Congress by the provisions of section 64b (4) intended to exclude such claimants from availing themselves of the benefits of section 64b (5). In the absence of liens under the State laws, paragraph 4 would afford a just and equal remedy for the prior allowances of wages claims under the bankruptcy law, but I find nothing therein which contemplates the disallowances of wages claims which have become liens by virtue of the State laws and impressed upon the fund when turned over to the bankruptcy court. It will be noted that in the construction of the law adopted in Re Kerby-Dennis Co. the statutory liens under paragraph 5 were preferred to allowances under paragraph 4, evidently because they were established as liens under the State law, though the other claims were in time to be established as wages claims under paragraph 4 of the Bankruptcy Law. This seems to me to be entirely consistent with the general purpose of the Bankruptcy Law.

Liens intended to be excluded from preference were carefully described under section 67 and a lien for wages was, to my mind, no more intended to be excluded than mechanics' liens, for example, which have been held in this circuit not to have been excluded. (In re Emslie, supra.) The same reason given for the sustainment of a mechanic's lien would apply here in full force. A lien for wages is based upon a present consideration and there is no equitable consideration in favor of general creditors which should defeat such a lien.

The question remains, were these claims liens? It is contended by the trustee that the law of the State of New York does not create a lien in such a case but only provides for one as long as the artisan has the article he improved in his possession. This, however, is not a claim of lien upon the article but upon the fund. The language of the New York statute is similar in effect to that of the Ohio statute, which was under consideration in Re Coe, and the design of the legislature was apparently the same. The claims are made charges upon the fund and I see no practical difference between sustaining the right of wage earners to resort to a fund in preference to other creditors and allowing mechanics to assert a lien upon real estate, which they have benefited, in preference to other creditors. The presumption is, under the statute, that the wage earners were instrumental in producing the fund and should be entitled to payment out of it. The claims should be deemed as equivalent to and in fact liens, so as to entitle them to priority in this court upon a fund which was received subject to the charges impressed upon it by the law of the State.

The order of the Referee is reversed and the claims will be allowed.