## In re McALLISTER-NEWGORD CO.

(District Court, D. Minnesota, Fourth Division. January 31, 1912.)

1. BANKRUPTCY (§ 192*)—MATERIALMAN'S LIEN—VALIDITY—EFFECT—TIME—SUBSEQUENT LIENS.

Laws Minn. 1911, c. 320, provides that whoever furnishes materials for the repair of any motor vehicle shall have a lien thereon for the value of the materials contributed, which shall cease at the end of 60 days after the furnishing of the last item, unless within such period a statement of the claim therefor be filed for record. *Held* that, where a claim of lien for tire casings furnished for taxicabs owned by a bankrupt was filed within the period specified, it preserved the lien as of the date the materials were furnished and was superior to the rights of the trustee where the adjudication was made after the furnishing of the materials and before the filing of the notice.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 294; Dec. Dig. § 192.*]

2. BANKRUPTCY (§ 192*)—MECHANICS' LIENS—MOTOR VEHICLES.

Laws Minn. 1911, c. 320, provides that whoever furnishes materials for the repair of a motor vehicle shall be entitled to a lien thereon for the price or value of the materials so furnished. *Held* that, where claimant furnished eight tire casings for automobiles to the bankrupt which was engaged in operating taxicabs, claimant was not entitled to a lien, unless at the time the casings were sold they were furnished for particular cars.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 294; Dec. Dig. § 192.*]

In the Matter of the McAllister-Newgord Company, Bankrupt. On claim of Charles J. Parker to enforce a lien for tire casings furnished for certain automobiles. Order disallowing the claim as a secured claim reversed and remanded, with instructions.

L. K. Eaton, for claimant.
E. H. Crooker, for trustee.

WILLARD, District Judge. In the summer of 1911 the McAllister-Newgord Company, a corporation, was engaged in the taxicab and automobile business in Minneapolis. Between the 7th day of July, 1911, and the 15th day of July, 1911, the claimant, Parker, sold and furnished to the bankrupt, eight tire casings for automobiles. The corporation was adjudicated a bankrupt on July 31, 1911. On August 30, 1911, Parker filed in the office of the city clerk of Minneapolis a claim for a lien upon four motor cars to which the above-mentioned tire casings had been attached. This lien statement was filed pursuant to the conditions of chapter 320 of the Laws of Minnesota for 1911.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

That law so far as here material is as follows:

"Section 1. Whoever performs or contributes any labor or skill, or furnishes or contributes any machinery, supplies, materials or storage in making, altering, repairing, storing, or otherwise caring for any motor vehicle, whether pursuant to a contract with the owner of such motor vehicle, or at the instance or request of any agent of such owner, shall have a lien upon such motor vehicle for the price, or value, of the labor or skill performed, or machinery, supplies, materials or storage furnished or contributed. If the labor is performed, or machinery, supplies, materials or storage is furnished pursuant to a contract, for an agreed price, the lien shall be for the sum so agreed upon; otherwise, it shall be for the reasonable value thereof.

"Sec. 2. The lien shall cease at the end of sixty days after the furnishing of the last item of such labor, machinery, supplies, materials, and sixty (60) days after the termination of such storage, unless within such period a statement of the claim therefor be filed for record with the township clerk, city clerk or village recorder, as the case may be, in the township, village or city in which the owner of such motor vehicle resides."

The question in the case is not whether the lien given by this law is prior to other liens existing at the time the material was furnished; but is it good against subsequent liens? If the corporation had not gone into bankruptcy, would the lien have been good against a subsequent purchaser in good faith who bought the property within 60 days after the material was furnished and before any statement was filed? Would it have been good against an execution creditor who without notice thereof had levied upon the property under the same circumstances? If it would be good against such a subsequent purchaser or such a creditor, it would be good against the trustee. A proper construction of the statute indicates that the lien comes into existence, not when the statement is filed, but when the material is furnished. The lien is in force during the 60 days, though nothing appears in the clerk's office to so indicate. This is made certain by the use of the word "cease" in the second section of the act.

In a case decided in the Circuit Court of Appeals of the Seventh Circuit (In re Kerby-Dennis Co., 95 Fed. 116, 118, 36 C. C. A. 677, 679) the court said:

"We cannot doubt that the statute of Michigan gives to a laborer a lien for his services which results from the performance of, and exists from the commencement of, the work, and is not created by the proceedings to enforce the lien, but only continued or secured thereby. The proceedings under the statute are merely the means for the preservation and enforcement of a pre-existing lien given by the statute, and arising from the performance of the service. In re Hope Min. Co., 1 Sawy. 710, Fed. Cas. No. 6,681. The statute itself clearly demonstrates this. It provides that the claim or demand shall not 'remain a lien' upon the product, unless a statement of the claim is filed, and proper suit instituted, within a certain period. It speaks a lien pre-existing the statement of claims and the suit."

It therefore cannot be denied, and the trustee seems to admit, that, as between debtor and creditor, the lien is in existence before the statement is filed. The trustee claims, however, that it is not good against subsequent purchasers or attaching creditors.

As a general rule, a lien is inferior to all then existing liens and superior to all thereafter created. In order to make it superior to liens already existing, the law must so declare. In order to make it

inferior to liens subsequently created, there must be a declaration to that effect.

Applying this principle to the present case, it is apparent that the lien given by chapter 320 is superior to a subsequent attachment because there is nothing in the act which says that it shall be inferior thereto.

The trustee cites lien laws which expressly declare that the liens created thereby shall have priority. But in these cases the priority was over claims existing at the time the lien arose. Logger's lien, R. L. Minn. § 3524; seed grain lien, section 3479; mechanic's lien, sections 3505, 3508; thresher's lien, section 3546. In none of these cases is anything said about subsequent liens. The only case in Minnesota in which subsequent liens are mentioned is that relating to the wages of employés of manufacturers and merchants (section 3541). But it will be noticed that this section does not create a lien upon any property. It does not in fact create any lien at all, but simply, in case of a sale on execution or in insolvency, gives a preference to the employé. It provides for filing no claim in any public office. The lien given by chapter 320 is in all respects similar to the mechanic's lien given by sections 3505, 3508. That a mechanic's lien is good against a creditor who attaches the property after the furnishing of the material, and before the filing of the statement, is unquestioned.

Mott v. Wissler Min. Co., 135 Fed. 697, at page 699, 68 C. C. A. 335, at page 337, is a case very similar to the one at bar. The court there said:

"The sole question, therefore, presented for consideration, is whether the adjudication in bankruptcy intervening between the time when the last item of the account for supplies was due and the filing and recording of the claim had the effect to destroy the right of the Wissler Company to a priority in the distribution of the bankrupt's estate; and the proposition thus arising rests entirely upon the determination as to when the lien for supplies provided by the Virginia statute attaches—whether at the time the supplies are furnished, or not until the claim is filed and recorded."

It was held in that case as it must be held in this case that the lien existed at the time the corporation was adjudicated a bankrupt.

Those provisions of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) relating to the recording of instruments where such recording is required by a state law have no application here, for, as has been seen, this law does not require the recording of the statement during the 90 days.

[2] If this were all that there was of the case, the order of the referee would have to be reversed. But one other question is raised by the trustee. He claims that it does not appear that the tires were furnished for the vehicles upon which they were placed. So far as appears, this point was not made before the referee, and was not passed upon by him. As has been said, the bankrupt was engaged in the business of operating taxicabs. It was the owner of 12 motor cars. The claimant sold to it eight tires, which were placed on four different cars. If at the time they were sold they were furnished without reference to any particular car, and the placing of them was

a subsequent act of the purchaser without any agreement relating thereto between it and the vendor, the latter would not be entitled to a lien upon the cars upon which the tires were placed. Ryan Drug Company v. Rowe, 66 Minn. 480, 69 N. W. 468; Forman v. St. Germain, 81 Minn. 26, 83 N. W. 438. The evidence presented to the referee and returned here leaves it doubtful as to whether there is any lien at all or not. Under these circumstances it seems better to remand the case for further evidence upon this point.

The order of the referee dated September 7, 1911, disallowing Parker's claim as a secured claim, is reversed, and the case remanded to the referee, with instructions to receive further evidence upon the question as to whether or not the tires were furnished for the machines upon which they were placed.