HARRINGTON v. UNION OIL CO. et al.

(Circuit Court, N. D. West Virginia. February 26, 1906.)

1. RECEIVERS—APPOINTMENT—CONDITION OF PLEADINGS.

Where a complainant in a suit in a federal court of equity fails to except or reply to answers filed by the next succeeding rule day, the power of the court is limited by equity rule 66 to a dismissal of the suit, unless for cause shown complainant is allowed to file a replication nunc pro tunc; and the appointment of a receiver on motion of complainant, after the filing of answers specifically denying the material allegations of the bill, without any exceptions or replication having been filed to the answers, or the taking of any evidence to sustain the allegations of the bill, is wholly unwarranted.

2. LIENS—WAIVER OF PRIORITY.

One having a lien upon property established by the decree of a state court, who voluntarily becomes a party to a suit in a federal court in which a receiver for the property has been appointed and authorized to incur an indebtedness which was made an express lien on the property, and who consents to the confirmation of a sale made to satisfy said receiver's lien, thereby waives his right to insist upon the priority of his own lien.

3. RECEIVERS—WRONGFUL APPOINTMENT—LIABILITY OF COMPLAINANT FOR EXPENSES.

Complainant brought a suit in equity in a federal court to recover an interest in an oil lease. Sworn answers were filed, specifically denying his interest and all the material allegations of the bill. Complainant filed neither exceptions nor replication to such answers, but on his motion a receiver was appointed to take charge of and operate the leasehold property, who, although no evidence was ever taken in the case, was continued in possession for a number of years, and incurred expenses and indebtedness under orders of the court which exceeded the proceeds of the property when sold and the income derived from its operation. Complainant subsequently filed a pleading in answer to the petition of an intervener, in which he denied any interest in the property. Held, that he should be required to pay all costs of the suit and expenses of the receivership wrongfully incurred at his instance.

In Equity.

On September 29, 1900, William Harrington filed his bill in this court against the Union Oil Company and Morris Forst, its vice president, setting up a claim to a one-fourth working interest in an oil lease derived by said Union Oil Company from G. R. McGranahan, F. E. Metzger, and W. H. Ebinger. Said lease was on a tract of 115 acres of land in Tyler county, W. Va., owned by D. Carmichael and wife, and by them leased to McGranahan, Metzger, and Ebinger. The claim of the plaintiff to this interest was based solely upon an alleged verbal contract made between him and Forst as vice president of the oil company to the effect that the assignment of said lease should be secured by the said Forst in the name of the Union Oil Company, and that it was to assign to the plaintiff a one-fourth working in-

terest therein, and that he was to pay two-fifths of the expense of drilling and the oil company was to pay three-fifths thereof. The bill sought an injunction against the further operation or disposition of the oil or leasehood by the defendant company, and the appointment of a special receiver. Such injunction was immediately granted, process issued, and on the 7th of January, 1901, the defendant oil company filed its written demurrer, which on July 20, 1901, was overruled. Thereupon on the same day the Union Oil Company filed its answer to the bill, denying in minute detail all the material allegations of the plaintiff's bill in reference to the making of the contract between it and Forst with the said plaintiff, and denying in the most positive terms that the complainant had an interest of any kind or character in and to said lease. This answer was sworn to by Forst.' This answer further set forth that it had assigned the one-fourth working interest to Aaron Steelsmith, who in turn had assigned such interest to the Penn Oil, Gas & Mining Company, and, further, that it had assigned a three-eighths working interest to Morris Forst, trustee for the benefit of its creditors. The other three-eights working interest it is admitted had been retained under the assignment by McGranahan, Metzger, and Ebinger. On this same 20th day of July, 1901, the Penn Oil, Gas & Mining Company filed its petition in the cause, alleging that it was the assignee of one-fourth working interest assigned by the Union Oil Company to Steelsmith and by Steelsmith to it, and by said petition being admitted as a defendant to said bill, it thereupon filed its answer; also, on the same day the Equitable Trust Company filed its petition, alleging assignment of the three-eighths interest by the Union Oil Company to Morris Forst, trustee, for the benefit of its creditors, and further setting forth that by proper legal proceeding it had been substituted as trustee in place of Forst, and, being admitted as defendant to said bill, it thereupon on the same day filed its answer thereto. The answers of these two companies are practically the same in their allegations as those contained in the original answer of the Union Oil Company, and in plain, minute, absolute, and unqualified terms deny all the material allegations of the bill that in any way set up any interest whatever in said lease in the plaintiff Harrington. No replications of any kind were filed to said answers, but the same decree, entered on the said 20th day of July, 1901, which filed these petitions and answers, on motion of the plaintiff, appointed Granville Stout as a special receiver for the leasehold premises, together with all the producing wells, oil-well supplies, casing, tubing, tankage, derricks, and other property belonging to said leasehold and thereon situate, directing him to take immediate possession of said property, produce oil from any wells, and giving him leave to employ assistants, including legal counsel, and further directing the Eureka Pipe Line Company to turn over to him all oil in its pipes to the credit of said leasehold, or that might be run from any well or wells thereon.

On the 3d of August, 1901, this receiver filed his report and asked leave to drill wells to protect the lines of the lease from wells drilled on adjoining properties, and by decree of that day was authorized to contract for the drilling of a well which cost $1,375.20. Four days subsequently the receiver filed his second report, giving appraisement of the property on the leasehold and fixing its value at $2,552. On the 10th of October, 1901, he filed his third report, in which he asked permission to borrow $2,000 to pay for the drilling of the well and other purposes, and for the purpose of continuing operations, and by a decree entered on the following day he was directed to borrow $2,000 from the Wood County Bank for the purposes aforesaid, and for which loan an express lien was made upon the leasehold and the property thereon. On December 27, 1901, receiver filed another report, in which he states that he has received only one-fourth of the oil, and that F. E. Metzger and others are the owners of another quarter interest, and are contributing nothing towards the developments, although receiving one-fourth of the production, and asking that such interest be required to pay its proportion. On June 16 1902, C. T. Caldwell and V. B. Archer filed their petition, setting forth their appointment as counsel for receiver, and asking an allowance of $250 each, which by a decree entered was granted to them. On the 17th day of June, 1902, the receiver filed his petition asking permission to

contract for the drilling of well No. 4, and for the cleaning out of well No. 3, and by a decree of that date he was directed to contract with A. Steelsmith for such work, compensation for which was made a lien upon the production and personal property on the premises, subject, however, to the lien of the Wood County Bank and other liens. On the 19th day of July, 1902, plaintiff filed his petition, again alleging the ownership of a one-fourth working interest in said lease, and the appointment of the receiver for said property; that J. C. Leonard, long after the institution of this suit, had procured judgment in the circuit court of Tyler county against the Union Oil Company, had procured in an equity proceeding in said court a decree for the sale of the leasehold and that the same was advertised for sale on the 23d day of July, 1902; that said sale would squander said property; and prayed an injunction restraining the same, which injunction by decree was granted. On August 30, 1902, the plaintiff filed his second petition, setting forth that J. W. Grimm, sheriff of Tyler county, holding taxes against the property, was about to sell such property then in the hands of the receiver to discharge said taxes, and asking a restraining order against him for making such sale, which by a decree entered was granted and Grimm was made a party defendant. On May 16, 1903, George R. McGranahan, F. E. Metzger, W. H. Ebinger, and J. H. Russell filed their petition, setting forth that they were owners of a three-eighths undivided working interest in the leasehold in controversy, and praying that the said property be sold and the proceeds divided among the respective owners as their interest might appear, and by a decree they were made parties; the court reserving the right to arrange the parties as to it might seem right. On the 3d day of March, 1904, the receiver filed a report in which he asks that a sale of the property be made, and by a decree of that date such sale was directed to be made. On June 17, 1904, J. C. Leonard filed his petition and answer, setting up that without knowledge of the pendency of this suit he had instituted suits in Tyler county circuit court by which a judgment against the Union Oil Company for a net sum of $4,231 had been decreed to him, and $1,710.17, part thereof, had been decreed to be a mechanic's lien upon said leasehold, and a commissioner had been appointed to advertise and sell said property (but such sale had been restrained by order of this court), alleging that a mining partnership had existed between the plaintiff and the other holders of interests in said leasehold, in consequence of which all were liable for his claim, and he prays that his judgment and lien be enforced, the property in the hands of the receiver be converted into money and applied to the liquidation of his claim, and that a personal decree be granted to him against the several claimants to said leasehold for any balance necessary to meet his demand. This petition was sworn to. Process issued thereon, and was served upon the parties. On the 3d day of August, 1904, the report of sale made by the receiver was filed, and a decree was entered confirming the same, making certain allowances, and referring the cause to a special master to settle, first, the account of the special receiver; second, to ascertain what amount, if any, should be contributed by the parties to the suit on account of operations on the leasehold premises, and the proportion that should be paid by them, respectively; third, what accounts are due and unpaid from the receiver; fourth, what distribution should be made of the funds in the hands of the receiver, and to what account moneys that may be collected from other owners should be paid, and the amount that each of the respective owners of the premises should be required to contribute.

It is to be especially noted, in passing, that so far as the record discloses, while the decree of sale was not a consent one, no objections or exceptions to the same were made, and that the decree of August 3, 1904, confirming the said sale, was entered "by consent of all parties, by counsel." This decree confirmed the sale of the leasehold property to Lyman B. Dellicker, at the price of $2,450, paid in cash to the receiver and by him paid to the registrar of this court. It then directed to be paid out of said fund to the receiver $5 for making deed to purchaser, $49.59 advertising costs, $20 for auctioneer's fee for making sale; to V. B. Archer $250, and to the Wood County Bank, assignee of Charles T. Caldwell, $250, the amounts that had theretofore been allowed to said Archer and Caldwell as attorneys for the receiver; to said

receiver $466.87, aggregate of his personal expense as such receiver, and the further sum of $360 for his compensation for the three years from July 20, 1901, to July 20, 1904; and further authorized said special receiver to employ counsel in prosecuting suit to compel contribution from co-owners, and allowing him the sum of $200, to be paid out of said fund by the registrar, to pay said counsel. On the 14th day of July the plaintiff, Harrington, by counsel, filed his answer, unsworn to, to the petition of Leonard, which is wholly contradictory of his original pretensions in the cause theretofore made by him. In this answer to this petition he denies that any mining partnership existed, sets forth that the contract between the defendants and the Union Oil Company was a verbal agreement, which the said company refused to recognize and wholly denied; that, although he brought suit against said company to enforce said contract, yet no transfer was ever delivered to him, nor was any decree ever made in his favor giving him such interest; that there was no proof taken in the cause to sustain the allegations of his bill; and that he has no legal interest in said lease, or to said lease or any part thereof, nor received any benefit therefrom, nor exercised any ownership over said property, nor has he been in possession of the same. On the 15th day of September, 1905, the report of Special Master L. V. G. Morris was filed in the office of the clerk of this court, and to this report, by order entered on the 13th day of December, 1905, exceptions were filed by J. C. Leonard; and on the 2d of January, 1906, McGranahan, Metzger, and Ebinger jointly filed exceptions thereto and the plaintiff, Harrington, likewise filed exceptions thereto, and the cause was at said January term submitted for final hearing.

Caldwell & Watson, for plaintiff.
V. B. Archer, for defendants.

DAYTON, District Judge (after stating the facts as above). In my judgment, with the utmost respect for the judgment and learning of my predecessor, all proceedings in this case had after the 20th of July, 1901, filing the answer of the defendant the Union Oil Company and the petitions and answers of the Equitable Trust Company and the Penn Oil, Gas & Mining Company, were wholly unwarranted. These answers, in apt, explicit, comprehensive, and complete terms, denied each and every material allegation of plaintiff's bill and his right to any interest in and to the leasehold property in controversy. The limit of judicial power, under the circumstances, would have been to have entered an order giving plaintiff a time within which to reply generally to said answers, and, in case he did so, to allow time to the parties to take evidence touching the very marrow of the controversy, to wit, whether plaintiff had any such interest as claimed by him in such leasehold property. In case he did not reply within the time fixed, or in case he, having replied, failed to establish by proof his interest in the property, this court had but one thing to do, and that was to dismiss his bill, with costs in favor of the defendants.

To suffer answers to be filed which wholly deny plaintiff's right, and in the same decree filing them, with no exceptions and no replications thereto, no evidence by affidavits or otherwise to show necessity, to appoint a receiver and direct him to withdraw the property from the hands of those who have possession and deny the plaintiff's right, is in my judgment a grave and serious abuse of judicial discretion and power, calculated, as this case demonstrates it did, to cause great confusion, injustice, and injury very difficult for the

courts subsequently tő either correct or compensate for. On the contrary, the court's duty upon the filing of such answers is clearly set forth in equity rule 66 as follows:

"Whenever the answer of the defendant shall not be excepted to, or shall be adjudged or deemed sufficient, the plaintiff shall file the general replication thereto on or before the next succeeding rule day thereafter; and in all cases where the general replication is filed, the cause shall be deemed, to all intents and purposes, at issue, without any rejoinder or other pleading on either side. If the plaintiff shall omit or refuse to file such replication within the prescribed period, the defendant shall be entitled to an order as of course, for a dismissal of the suit; and the suit shall thereupon stand dismissed, unless the court. or judge thereof, shall, upon motion, for cause shown, allow a replication to be filed nunc pro tunc, the plaintiff submitting to speed the cause and to such other terms as may be directed."

In this case, the answers were filed, no exceptions taken, no replications were filed within the prescribed period nor since, and no application has ever been made to file the same nunc pro tunc. Nevertheless, by the same decree that filed 'the answers, a receiver was appointed on motion of the plaintiff, and subsequently money was borrowed by the receiver, wells drilled, large expenses incurred, injunctions awarded, still on motion of plaintiff, against a judicial sale by a state court and by a sheriff for taxes, the sale of the property was made, large sums decreed from the proceeds for receiver's expenses and charges, liens created upon the property, all after the bill should have been and by the rule technically stood dismissed, with about the usual result in such cases, that the property was wholly inadequate to pay for these extravagant outlays incurred under judicial authority and control, and now it is largely, if not solely, the question who shall sustain the loss and deficit. I have had great difficulty to determine what should be done, under these perplexing conditions. I have reached the conclusion that it is my duty to backtrack as far as possible and place all parties in the position as near as possible that they would have been in August, 1901, when this bill should have been dismissed; but in attempting to do this I am met with the condition that the court improperly authorized the receiver to borrow $2,000 from the Wood County Bank and created it an express lien upon the property, before Leonard by his proceeding in the state court obtained on December 10, 1901, the adjudication and determination of his mechanic's lien thereon, and that, with all parties before the court except Leonard, against whom injunction had been awarded, but not served, a decree of sale was ordered of the property expressly to pay this and other debts made by the receiver.

It would be very difficult to solve this problem equitably, were it not for the further facts that Leonard on June 17, 1904, by petition made himself a party to the cause, and on August 3, 1904, upon the coming in of the report of sale, consented to the confirmation of the sale of the property to satisfy said bank debt and other debts incurred by the receiver. The language of this decree is broad and unequivocal. After setting forth the sale of said property to Dellicker for $2,450, and the payment of that sum to the receiver by the pur-

chaser, and his payment thereof to the registrar of this court, it says:

"And there being no exception to said report, by consent of all parties by counsel it is adjudged, ordered, and decreed" that the sale be confirmed and the allowances be paid out of the proceeds for deed, advertising, auctioneer's fee, attorney's fees, receiver's expenses and partial compensation, and unpaid costs."

By this consent decree I am convinced that Leonard must be held to have waived his right to hold this property primarily liable to his mechanic's lien in favor of these debts incurred by the receiver, and contented himself with asserting his demand for a personal decree against the parties interested in this lease under his view that they composed a mining partnership. I am therefore constrained to hold, for this reason and the further one that no exception or appeal has ever been taken to either the decree of sale or of confirmation, that I cannot now disturb their provisions, but in all respects they must stand. I am, however, authorized to hold the plaintiff responsible for his acts in this case. There can be no question whatever under the pleadings in the case that he has not, nor ever had, any legal interest in the leasehold. He admits it in his answer to Leonard's petition, yet by his false clamor he has been directly the cause of a very large outlay in costs and expenses. He should be made to pay these sums, or their equivalent, to the relief of the injured parties involved. To be specific, he should pay the costs of this suit, including the amounts paid out of the funds, or else account for a sum equivalent thereto, and should be subject to a decree for costs incurred by the defendants the Union Oil Company, the Equitable Trust Company, and the Penn Oil, Gas & Mining Company in defense of his action. He should be required, in addition to these costs, to account for a sum equivalent to the expenses of the receivership, wrongly created and continued on his application, consisting of the items of $5, $49.59, and $20, costs of sale of property, $250 paid as counsel fee to C. T. Caldwell's assignee, the Wood County Bank, $250 paid as counsel fee to V. B. Archer, $466.87 allowed receiver for his personal expenses, $360 allowed receiver as compensation, $200 allowed for future counsel fees, together with the costs of Special Master Morris and the allowance that may be made him for making his report filed, and the supplemental one hereinafter directed to be made by him, and any additional compensation that may be due the receiver, if any, for his services. He should also pay the unpaid debt due the Citizens' Trust & Guaranty Company for furnishing bond for said receiver, ascertained by Master Morris to be $32.50. On all these sums he should be charged with interest from the date of the allowance of the items by the court or the date when the items of debt were incurred. A rough calculation would indicate that these sums, when so paid into court by the plaintiff, will be sufficient, with the sums now in the registry of the court and in the hands of the receiver, to pay off all debts unpaid by this unfortunate and deplorable receivership. However, this should be accurately ascertained, and for this purpose I will, for the present, direct Special Master Morris to make and file as speedily as possible a supplemental report and account

showing (a) the exact amount of the court costs incurred by plaintiff in this cause, and what part thereof, if any, has been paid, either by the receiver or the registrar of this court, out of funds, in their hands; (b) the exact amount of costs incurred by the defendants the Union Oil Company, the Equitable Trust Company, and the Penn Oil, Gas & Mining Company in their defense of this cause, allowing but one attorney's docket fee; (c) the aggregate costs incurred in said receivership, other than sums expended in the development of the property, being the items of $5, $49.50, and $20 costs of sale, $700 attorney's fees, $826.87 receiver's expenses and compensation, and $32.50 costs of receiver's bond, with proper interest upon said sums; (d) the amount of outstanding debts due from said receivership to date; (e) the amounts in the hands of the receiver and the registrar of this court to the credit of this cause; (f) what additional expense account or compensation, if any, said receiver is justly entitled to; and (g) the costs of his said reports, with a statement of what he deems a just compensation to himself for making the same.

Said supplemental report may be made by said special master after 10 days' notice given by him to counsel representing the parties. Upon the coming in of said supplemental report I will decree the plaintiff to pay the sums indicated either to the registrar or the parties entitled, and will, when the same are paid, then dismiss the cause, including the petition of Leonard, the latter, however, without cost and without prejudice to any right he may have by proper proceeding to enforce payment of his debt against the parties claiming to have had interest in said leasehold, other than plaintiff, Harrington, whom I adjudge never to have had any interest therein; it being a self-evident proposition that, if plaintiff's bill was not maintainable, the said Leonard's petition in the nature of a cross-bill thereto cannot be maintained.