**In re GREEN RIVER JOCKEY CLUB.**

**Petition of RASH.**

(District Court, W. D. Kentucky. May 1, 1925.)

1. **Bankruptcy ☞346—Rule of priority as between tax claims, other liens, and general creditors of bankrupt, stated.**

Under Bankruptcy Act, § 64 (a), being Comp. St. § 9648, tax claim of national or state taxing unit against bankrupt is entitled to preference over general creditors, regardless of whether tax is made lien on bankrupt's property by law which imposes it; but, where statute imposing tax does not make it lien, it is not entitled to priority over other valid and subsisting liens.

2. **Bankruptcy ☞346—Person who paid license tax for bankrupt held not subrogated to state's right of priority.**

Interested party, who paid license tax, imposed on bankrupt club prior to its bankruptcy, for conducting racing meet under Acts Ky. 1920, c. 19, which did not give state any lien, was not subrogated to rights of state under Bankruptcy Act, § 64 (a), being Comp. St. § 9648, so as to have priority over general creditors.

3. **Bankruptcy ☞346—State court cannot add to provisions of Bankruptcy Act relating to priority of tax claims.**

Order of Kentucky circuit court purporting to substitute person who, pending suit in that court, paid license tax imposed on bankrupt, under Acts Ky. 1920, c. 19, to all rights and priorities of state could not add to provisions of Bankruptcy Act, § 64 (a), being Comp. St. § 9648, relating to priority to tax claims.

4. **Taxation ☞531 (2)—Taxing unit cannot assign its claim for taxes to citizen, and thereby subrogate him to its collecting rights, unless statute expressly so provides.**

State tax is not ordinary debt and is not subject to party's control, and taxing unit cannot assign its tax claim to citizen, and thereby subrogate him to its collecting rights, unless law expressly confers such power.

5. **Taxation ☞550—Kentucky revenue agent has only such authority as is expressly conferred on him, and cannot assign tax claim nor subrogate assignee to rights of state.**

Inferior officers and agents of state of Kentucky, such as revenue agents, have only such authority as is expressly conferred on them and such incidental authority as may be necessary to carry out powers expressly given, and revenue agent has no power to assign tax claim nor subrogate assignee to rights of state.

6. **Bankruptcy ☞342½—On petition to review referee's findings, bankruptcy court has power to review and revise entire ruling of referee.**

On petition to review findings of referee denying claim to priority, bankruptcy court has power to review and revise entire ruling of referee and disallow claim.

7. **Bankruptcy ☞346—Person who borrowed money to pay bankrupt's taxes prior to bankruptcy held general creditor of bankrupt.**

Person who borrowed money to pay bankrupt jockey club's license tax under Acts Ky. 1920, c. 19, prior to bankruptcy, on strength of resolution of bankrupt's board of directors authorizing him to do so and attempting to subrogate him to supposed lien of state, held bankrupt's creditor entitled to file claim as general creditor.

In Bankruptcy. In the matter of the Green River Jockey Club, bankrupt. On petition of O. W. Rash to review an order of the referee declining to allow petitioner's claim as preferred claim. Claim dismissed, with leave to file claim as general creditor.

Vance & Heilbronner, of Henderson, Ky., for petitioner.

Dorsey & Dorsey, of Henderson, Ky., for trustee.

DAWSON, District Judge. This matter is before me on petition of O. W. Rash to review the order of the referee, declining to allow as preferred a claim against the bankrupt estate for $29,300, with interest from April 2, 1923, filed by O. W. Rash, and allowing as an unsecured claim against the estate $28,800 of said claim, with interest thereon at the rate of 6 per cent. per annum from April 2, 1923.

The facts out of which this claim grows, as shown by the record, are as follows:

The bankrupt, Green River Jockey Club, is a corporation, organized under the laws of the state of Kentucky, with authority to own and operate a race course, and in the month of July, 1922, it operated and conducted, for a period of 10 days, a race meet at Dade Park, near Henderson, Ky. This meeting

was held under the jurisdiction and supervision of the Kentucky State Racing Commission, and under the provisions of chapter 19, p. 103, of the Acts of 1920, it became obligated to pay to the state of Kentucky a license tax of $2,500 for each day of said 10-day race meet, or a total of $25,000.

In conformity to the law, the bankrupt, prior to December 1, 1922, reported to the auditor of public accounts of the commonwealth of Kentucky the fact that it had conducted said race meeting for 10 days, and thereupon, in due course, the auditor notified the bankrupt that it owed the state of Kentucky $2,500 for each day of said 10 days' meeting, and made demand upon the bankrupt for a total tax of $25,000. This tax was not paid, and on the 19th day of March, 1923, the revenue agent for the state at large, W. O. Mays, instituted suit in the Franklin circuit court against the Green River Jockey Club to recover the amount of the tax, with interest thereon at the rate of 6 per cent. per annum from December 1, 1922, together with a penalty of 20 per cent. of the amount of said license tax and interest.

One of the moving spirits in the organization and conduct of the Green River Jockey Club was Lee Baskett, who was a large stockholder, director, and president of the corporation. At a meeting of the board of directors, held on March 24, 1923, Baskett proposed to the board of directors that he would furnish the money to pay off this claim of the state for license taxes, provided the company would reimburse him, and that he could be substituted to all the rights, priorities, and liens of the state of Kentucky in the premises. This proposition was accepted by the board of directors, by resolution regularly adopted on that date; the acceptance of the proposition being in this language:

"On motion duly seconded, it was unanimously resolved that Mr. Lee Baskett be requested to advance the money for the payment of said tax, penalty and interest to the state of Kentucky, and that he be substituted, upon the payment thereof, to all the rights, priorities, and liens of the state of Kentucky."

Baskett did not have the money with which to pay this claim of the state, and the claimant, O. W. Rash, agreed to lend to Baskett the money, upon his note, with J. H. Baskett, Thomas Baskett, and G. W. Ragan as sureties, and C. C. Crafton as indorser thereon. It developed later, however, that Mr. Rash did not find it convenient to lend the entire amount necessary. It was thereupon arranged that Mr. Rash would lend to Baskett $20,000 of the sum, to be evidenced by two notes of Lee Baskett, each for the sum of $10,000 with Thomas Baskett, G. W. Ragan, and J. H. Baskett as sureties, and with C. C. Crafton as indorser thereon, and that the remainder of the money necessary to be raised should be borrowed from the Farmers' Bank & Trust Company, of Henderson, Ky., upon the note of Lee Baskett, Thomas Baskett, G. W. Ragan, and J. H. Baskett to C. C. Crafton, which was to be discounted by said Crafton to the Farmers' Bank & Trust Company, of Henderson, Ky., and that the money received on this note should be turned over to the claimant, O. W. Rash, and this sum, together with the sums realized on the two $10,000 notes executed by the parties above named to O. W. Rash, should be by said Rash paid to Lee Baskett, with the understanding that he would use this sum in satisfying the claim of the commonwealth above referred to.

This arrangement was carried out, and the tax claim of the commonwealth was satisfied by Lee Baskett paying to the commonwealth of Kentucky the sum of $25,000, together with penalty and interest, aggregating in all the sum of $29,300. Thereupon the following order was entered upon the records of the Franklin circuit court in the suit which had been filed to collect said license tax:

"Franklin Circuit Court, April Term. April 2, 1923.

"The Commonwealth of Kentucky, by Wm. O. Mays, Revenue Agent for the State at Large, Plaintiff, v. Green River Jockey Club, a Corporation, Defendant.

"Order.

"This day came the plaintiff by W. O. Mays, revenue agent for the state at large, and stated to the court that the tax and penalty in this case had been paid by Lee Baskett, president of the Green River Jockey Club, out of his individual funds and, on his motion, the said Baskett is substituted to all the rights and priorities of the state of Kentucky for its claim of ($25,000.00) twenty-five thousand dollars, license tax for the fall meeting 1922 of the said jockey club and 20 per cent. penalty thereon, and this proceeding is dismissed without prejudice to the rights of the said Baskett to proceed against the said Green River Jockey Club and recover of it the demand sued on herein in any proceeding and this cause is stricken from the docket."

Subsequent to the entry of this order, Lee Baskett undertook to assign his rights there-

under to O. W. Rash, by the following in-dorsement:

"Whereas, I have borrowed from O. W. Rash the sum of $29,300.00, evidenced by three different notes on which Thomas Bas-kett, George W. Ragan, C. C. Crafton and J. H. Baskett are bound to said Rash either as sureties, makers or indorsers—

"Now, in order to further protect said Rash against loss, and to provide additional security for the said loan and the interest that may accrue thereon, or any renewal of any of said notes, in whole or in part, I hereby transfer and assign to the said Rash the above judgment.

"This assignment is made with the full knowledge and consent and at the instance of the said Thomas Baskett, George W. Ragan, C. C. Crafton and J. H. Baskett.

"[Signed]   Lee Baskett."

Relying upon this assignment, the claim-ant, O. W. Rash, asserts priority for the claim of $29,300, by virtue of section 64(a) of the Bankruptcy Act (Comp. St. § 9648), which provides:

"The court shall order the trustee to pay all taxes legally due and owing by the bank-rupt to the United States, state, county, dis-trict, or municipality in advance of the pay-ment of dividends to creditors, and upon fil-ing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any ques-tion arises as to the amount or legality of any such tax the same shall be heard and de-termined by the court."

[1] Under this section of the Bankruptcy Act, a valid and subsisting claim of a tax-ing unit, either national or state, against the bankrupt for taxes due it, is entitled to pref-erence over general creditors, regardless of whether the tax asserted by the taxing unit is made by the law which imposes it a lien on the bankrupt's property or not. But where the statute imposing a tax does not make same a lien upon the property of the bank-rupt, such tax, even when asserted by the taxing authority, is not entitled to priority over other valid and subsisting liens. City of Richmond v. Bird, 249 U. S. 174, 39 S. Ct. 186, 63 L. Ed. 543.

[2] Under the law of Kentucky, the tax of $2,500 a day exacted for conducting racing meetings under the jurisdiction of the Ken-tucky State Racing Commission is not a lien upon the property of the person or or-ganization liable for the tax. The only way the state has of enforcing such a tax, in event of its nonpayment, is to bring suit, obtain judgment, and issue execution against the property of the person liable, in the same way as any other unsecured creditor may make his debt. Therefore, if the state of Kentucky were asserting its claim for this license tax, it would be entitled to preference only over the general creditors. Inasmuch as the state itself had no lien for this license tax, this case does not fall within the gen-erally recognized rule that one who has an interest in property which is in lien for taxes may pay such taxes to avoid distraint and sale, and be subrogated to the lien of the taxing unit. The question therefore aris-es whether or not even an interested party may pay taxes which are not a lien upon the property of the bankrupt, and by such pay-ment become subrogated to the rights given to the taxing unit under section 64(a) of the Bankruptcy Act. It seems to the court very clear that the language of the act itself precludes any such right. By its terms it is specifically confined to taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality. If the taxes have already been paid to the tax-ing unit, then the taxes are not due to the taxing unit, and section 64(a) cannot apply.

[3-5] The order of the Franklin circuit court entered on April 2, 1923, heretofore quoted, and the assignment thereof to Rash, cannot in any way add to the provisions of section 64(a), supra. This is true: First, because a state court is obviously powerless by any order it may enter to either add to or detract from the provisions of that section. In the second place, in so far as the order at-tempts to assign any rights, that the state had, to Lee Baskett and to subrogate him to the rights of the state, it is absolutely void. It is an elementary principle of law that a tax due a taxing unit is not a debt, in the ordinary sense of the word, and is not there-fore subject to the control of the parties, and that the taxing unit cannot assign its claim to a citizen and thereby subrogate the citi-zen to the collecting rights of the taxing unit, unless the law expressly confers such power. Gibson v. Western & Southern Life Insur-ance Co., 161 Ky. 810, 171 S. W. 390, L. R. A. 1915D, 697. It is also elemental that inferior officers and agents of the state of Kentucky, such as was the revenue agent, have only such authority as is expressly con-ferred upon them, and such incidental au-thority as may be necessary to carry out the powers expressly given. The statute of Ken-tucky nowhere gives to a revenue agent the power to assign a tax claim and to subrogate the person to whom such assignment is made to the rights of the commonwealth, and the

attempt of Mays, in the order referred to, to so assign the claim of the state to Baskett and to subrogate Baskett to the rights of the state, was and is an absolute nullity. Therefore Baskett got nothing by the assignment or attempted assignment contained in the order of the Franklin circuit court. This being true, it necessarily follows that Rash secured no rights by the attempted assignment of this order to him by Baskett. As the assignment of this order to him by Baskett is the only authority exhibited by Rash upon which to base his proof of claim, it seems to the court to necessarily follow that Rash is not a creditor of the bankrupt, either preferred or general, for any portion of the money secured from him and used by Baskett in the payment of the license tax referred to.

[6, 7] The matter is specifically before this court on petition of Rash to review the finding of the referee, denying his claim priority over the general creditors; but the court has the power to review and revise the entire ruling of the referee as to this claim, and, being of the opinion that Rash's claim should not have been allowed, either as a preferred or a general one, it is ordered that same be wholly disallowed. It is very apparent, however, that Lee Baskett borrowed the money to pay the tax claim referred to, upon the strength of the resolution of the board of directors of the bankrupt, authorizing him so to do and attempting to subrogate him to the supposed lien of the state. While this resolution cannot be construed as giving Baskett a lien on the property of the bankrupt for the amount paid by him in taxes, yet the transaction undoubtedly created the relation of debtor and creditor between the bankrupt and Baskett, and he should yet be allowed to file and prove his claim as a general creditor for the full amount of the taxes, interest, and penalty paid by him.