## In re EMPIRE GRANITE CO., Inc.

No. 632.

District Court, M. D. Georgia, Athens Division.

Jan. 1, 1942.

G. M. Lawson, of Atlanta, Ga., for Reconstruction Finance Corporation.

A. L. Henson, Asst. Atty. Gen., of Georgia, and Clifford Walker and Otis L. Hathcock, both of Atlanta, Ga., for Unemployment Compensation Division.

Max Michael and Green & Michael, all of Athens, Ga., for trustee, Z. B. Rogers.

John B. Gamble, of Athens, Ga., referee in bankruptcy, Athens Division.

DEAVER, District Judge.

Two petitions for review are presented in this case. They complain specifically of only certain portions of the referee's orders but the petitions, together with the record certified by the referee, necessarily present for determination the orderly distribution of the entire estate. See Dunn v. Interstate Bond Co., 5 Cir., 68 F.2d 364.

The bankrupt's estate consisted of certain personal property and some accounts receivable. Covering the personalty was a bill of sale to secure a debt of $3,647.45, held by the Reconstruction Finance Corporation (hereinafter referred to as R. F. C.). There was no request for abandonment of the property and it was sold by the trustee for $4,400. Accounts were collected in the sum of $182. The total fund for distribution was, therefore, $4,582.

The following claims were filed:

| | |
|---|---|
| R. F. C. (bill of sale) | $3647.45 |
| Elbert County, taxes | (Amount not stated) |
| City of Elberton, taxes | (Amount not stated) |
| Bureau of Unemployment Compensation (claiming lien as for taxes) | 1027.56 |
| Pete Galli, wages earned three months prior to bankruptcy | 33.00 |
| H. H. Stoner, wages earned three months prior to bankruptcy | 300.00 |

Applications were made also for payment of certain expenses and costs of administration.

The referee, by express consent of R. F. C. and without objection by any one, ordered paid the following:

| | |
|---|---|
| Fire insurance premium | $ 20.62 |
| Advertising sale | 16.00 |
| Rent due by receiver and trustee | 45.00 |
| Trustee's bond premium | 25.00 |
| H. H. Stoner, wages | 300.00 |
| Pete Galli, wages | 33.00 |

The following costs and expenses were fixed by the referee:

| | |
|---|---|
| Receiver's commissions | $ 37.91 |
| Trustee's commissions | 131.64 |
| Trustee's expenses | 9.50 |
| Fee for bankrupt's attorney | 100.00 |
| Fee for trustee's attorney | 150.00 |

The referee's compensation was not fixed.

The referee then:

1. Allowed the claim of R. F. C. for $3,647.45 as a lien claim.

2. Allowed the claim of the Bureau of Unemployment Compensation but subordinated it to the claim of R. F. C.

3. Overruled the objection of R. F. C. to payment of costs and expenses of administration out of funds on hand, and directed that costs and expenses be paid out of the surplus realized from the sale over and above the amount of R. F. C.'s claim.

4. Ordered the trustee, after payment of costs and expenses, to pay taxes due Elbert County and the City of Elberton and to pay the balance to R. F. C.

The items ordered by consent to be paid have apparently been already actually paid by the trustee.

The law governing distribution is contained in Bankruptcy Act, § 67, 11 U.S. C.A. § 107, and § 64, 11 U.S.C.A. § 104, hereinafter referred to as § 67 and § 64. For discussion of these sections, see Volume 3, Collier on Bankruptcy, 14th Ed., pp. 2054–2084.

In general, lien claims fall under Sec. 67 and must be paid in advance of claims under Sec. 64, which provides for priorities in payment of unsecured claims out of the unencumbered part of the estate. Section 67, sub. b preserves certain statutory liens and Sec. 67, sub. c postpones in payment statutory liens on personalty not accompanied by possession and liens of distress for rent to debts specified in 64(1) and (2). Statutory liens on real estate are not postponed but are payable pursuant to Sec. 67, sub. b. In re Pennsylvania Central Brewing Co., 3 Cir., 114 F.2d 1010; see In re Lasky et al., D.C., 38 F.Supp. 24(9).

A landlord's lien is postponed in payment only to claims provided for in the first two clauses of Section 64, but a mere priority or charge for rent under state law is subordinated to debts designated in first four clauses of Section 64. In re Lebed, D.C., 39 F.Supp. 457.

Section 64 deals with priorities in payment after liens have been paid. Though a lien for rent is postponed in payment to debts specified in Sec. 64(1) and (2), still the lien is not destroyed but comes under Sec. 67 and not under Sec. 64. In re Goldstein et al., D.C., 34 F. Supp. 876; see In re Jay & Dee Store Co., D.C., 37 F.Supp. 989; See volume 3, Collier on Bankruptcy, 14th Ed., p. 2054.

A lien creditor does not come under Sec. 64. That section gives the rule for paying out money which remains for distribution after liens are paid. A tax may be a lien or it may not. If it is a lien, it comes under Sec. 67; if not, it comes under Sec. 64. Wages secured by a lien fall under Sec. 67; wages not so secured fall under Sec. 64. Lien creditors under Sec. 67 are ahead of taxes without lien under Sec. 64. In re Brannon et al., 5 Cir., 62 F.2d 959; Reese v. United States et al., 5 Cir., 75 F.2d 9; In re Knox-Powell-Stockton Co., Inc., 9 Cir., 100 F.2d 979.

Taxes without lien are mere priority claims under Sec. 64. In re Dublin Veneer Co., D.C., 1 F.Supp. 313(3); In re Lasky et al., D.C., 38 F.Supp. 24(6); In re Green River Jockey Club, D.C., 5 F.2d 259.

Taxes with lien are payable ahead of claims having priority under Sec. 64. Miners Sav. Bank v. Joyce et al., 3 Cir., 97 F.2d 973(8).

Where no notice of Federal income tax is filed, it falls under Sec. 64 and is not payable until liens under Sec. 67 have been paid. Reese v. United States et al., 5 Cir., 75 F.2d 9; In re Howell & King Co., Inc., D.C., 16 F.Supp. 984.

Provision in Sec. 67 that liens shall not be affected to extent of present

consideration applies to United States. In re Knox-Powell-Stockton Co., 9 Cir., 100 F.2d 979(6).

▮ Tax liens and mortgage lien on realty are ahead of wage claims which were not liens. Miners Sav. Bank v. Joyce et al., 3 Cir., 97 F.2d 973(9).

▮ In this state a laborer's lien on personalty must be foreclosed as provided in Georgia Code 67-2401. A laborer's lien which has not been foreclosed cannot participate in a fund brought into court under other process which is subject of controversy in a money-rule case. In contest between unforeclosed laborer's lien and a duly foreclosed landlord's lien for supplies, the latter is entitled to payment in full, without regard to rank of the respective liens. Bryan v. Madison Supply Co., 135 Ga. 171, 68 S.E. 1106; see Love v. Cox, Sheriff, et al., 68 Ga. 269(1).

In Dunn v. Interstate Bond Company et al., 5 Cir., 68 F.2d 364, the employees of bankrupt were held not to have lien under Georgia law. Cost of administration was prior to their wages. It was said also that tax liens must be paid under Sec. 67 ahead of creditors given preference under Sec. 64.

Mechanic's lien, not continued as provided by New York statute, cannot be recognized in bankruptcy court. In re Willax et al., 2 Cir., 93 F.2d 293.

Wage claimants, not recording claims within time required by Texas law, acquired no liens. In re Brannon et al., 5 Cir., 62 F.2d 959(5); see In re Eakin Lumber Company, D.C., 39 F.Supp. 787 (19).

A perfected wage lien falls under Sec. 67 but an unperfected wage lien falls under Sec. 64 as an unsecured priority claim. In re Eakin Lumber Co., D.C., 39 F.Supp. 787.

▮ Laborer's lien preserved according to statute is payable in full in preference to priority claim for labor of same kind which has not been preserved, though both are equally claims for wages. In re Kerby-Dennis Co., 7 Cir., 95 F. 116.

▮ Non-lien wage claims could not be paid where fund would be exhausted by prior liens and administration expenses. In re Howell & King Co., Inc., D.C., 16 F.Supp. 984(5).

▮ A bill of sale to secure debt in this state passes title. Grantor's trustee in bankruptcy does not acquire title to the property thus conveyed but takes the equity, if any, for creditors. If the grantee comes into the bankruptcy court and the trustee sells the property freed from liens, the trustee must pay the secured debt, after deducting from the proceeds the amount of superior liens and certain costs measured by what it would have cost to foreclose in a state court. Tax liens are superior but laborer's liens are inferior to the bill of sale if their creation was junior to the bill of sale, or if the bill of sale was taken bona fide without notice of such liens. Bennett v. Green, 156 Ga. 572(2), 119 S.E. 620.

If in this case the claims for contributions, county taxes, city taxes and wages are true liens, they would fall under Sec. 67 and the order of distribution, except as modified by Sec. 67, sub. c, would be, as follows:

1. Unemployment compensation contributions
2. County taxes
3. City taxes
4. Debt secured by bill of sale
5. Wages
6. Priority claims under Sec. 64.

There is no question that the county and city taxes are liens falling under Sec. 67. If the wage claims and the claim for contributions are not liens, they come under Sec. 64 and, except as modified by Sec. 67, sub. c, are payable only after satisfaction of the lien claims and the debt secured by bill of sale.

Section 67, b, provides that "Where by such laws such liens are required to be perfected and arise but are not perfected before bankruptcy, they may nevertheless be valid, if perfected within the time permitted by and in accordance with the requirements of such laws, except that if such laws require the liens to be perfected by the seizure of property, they shall instead be perfected by filing notice thereof with the court."

The wage claims in this case were not perfected as required by Georgia law, Code § 67-2401, and they are not liens to be perfected by seizure of the property in the sense of the above quoted provision. Of course, under state law, the lien may be enforced ultimately by seizure of the prop-

erty but that seizure is only after the lien has been perfected as required by statute. See Reese v. United States et al., 5 Cir., 75 F.2d 9. If such seizure were intended by Sec. 67, sub. b, a wage lien could be perfected by merely filing proof of claim, which would place all wage claims under Sec. 67, and the provision in Sec. 64(2) giving wages priority among non-lien claims would be meaningless. The act recognizes that there may be wage claims which are not liens.

The wage claims are, therefore, not liens but merely priority unsecured claims under Sec. 64 and must await payment until liens are paid under Sec. 67, except in so far as statutory liens are by Sec. 67, c, subordinated to wages. See In re Auto Electric Repair & Parts Co., D.C., 41 F.Supp. 3(3).

The Bureau of Unemployment Compensation claims a lien for contributions. The bureau predicates its claim upon the Unemployment Compensation Act and sections 92-5707 and 92-5708 of the Georgia Code.

Section 92-5707 is, as follows:

"Taxes to be paid before other claims. Property always subject.—

"Taxes shall be paid before any other debt, lien, or claim whatsoever, and the property returned or held at the time of returning them, or thereafter, shall always be subject."

Section 92-5708 provides:

"Time liens for taxes attach to property of taxpayers and tax collectors. Priority of liens.—

"Liens for taxes, whether ad valorem, specific, or occupation, due the State, any county thereof, or municipal corporation therein, shall cover the property of taxpayers liable to tax, from the time fixed by law for valuation of the same in each year until such taxes are paid, and the property of tax collectors and their sureties from the time of giving bond until all the taxes for which they are responsible shall be paid. Such liens for taxes are hereby declared superior to all other liens, and shall rank among themselves as follows: First, taxes due the State; second, taxes due the counties of the State; third, taxes due to municipal corporations of the State."

The Unemployment Compensation Act of 1937, amended 1938, provides in Sec. 14(b) for collection by civil action and in Sec. 14(c), as follows:

"(c) Priorities under legal dissolutions or distributions.—

"In the event of any distribution of an employer's assets pursuant to an order of any court under the laws of this State, including any receivership, assignment of benefit of creditors, adjudicated insolvency, composition, or similar proceedings, contributions then or thereafter due shall be paid in full prior to all other claims except taxes and claims for wages of not more than $250 to each claimant, earned within six months of the commencement of the proceeding. In the event of any employer's adjudication in bankruptcy, judicially confirmed extension proposal, or composition, under the Federal Bankruptcy Act of 1898, as amended, contributions then or thereafter due shall be entitled to such priority as is provided in section 64(b) of that Act (U.S.C., title 11, section 104(b)), as amended." Code Ann.Ga. § 54-649.

The latter section, as amended March 21, 1941, provides:

"(c) Priorities under Legal Dissolution or Distribution.

"In the event of any distribution of an employer's assets pursuant to an order of any court under the laws of this State including any receivership, assignment for benefit of creditors, adjudicated insolvency, composition or similar proceedings, contributions then or thereafter due shall be paid in full on a parity with all other tax claims. In the event of any employer's adjudication in bankruptcy, judicially confirmed extension, proposal or composition under the Federal Bankruptcy Act of 1898 as amended contributions then or thereafter due shall be entitled to such priority as is provided in that Act for taxes due any State or the United States." Laws 1941, p. 551, § 22.

That section before the last amendment provided for priority payment in state liquidation proceedings and subordinated the contributions to taxes and certain wages. It further stated that the contributions should have such priority as was provided in Sec. 64 of the Bankruptcy Act.

As last amended, Sec. 14(c) makes contributions in state proceedings payable on a parity with other taxes and states that in bankruptcy they shall be entitled to such priority as is provided in the Bankruptcy Act for taxes due any state or the United States.

The state act, before the last amendment, not only did not create a lien but recognized that it did not do so by referring the priority to Sec. 64 of the Bankruptcy Act, which deals only with non-lien claims. The legislature did not refer to the Georgia code sections governing taxes and could not have intended them to apply by implication because, if so, the code sections and the act would be in contradiction, the former saying that taxes are superior to all other claims (including wages) and the latter saying that contributions are inferior to wages. If the legislature in amending that act in 1941 had taken the same view that counsel now urge, the natural way to express it would have been to say that contributions are a lien under the state tax laws. Instead of that, the legislature simply eliminated the subordination to taxes and wages and gave contributions in state proceedings the same priority as other taxes, and said they should, in bankruptcy, have the same priority as taxes. That provision does not create a lien. Taxes may or may not be liens. In re Brannon et al., 5 Cir., 62 F.2d 959, 962; In re Green River Jockey Club, D.C., 5 F.2d 259; In re Dublin Veneer Company, D.C., 1 F.Supp. 313(3). Taxes due a state or the United States, if not liens, have priority under Sec. 64. The state act, as amended, still refers contributions in Bankruptcy to Sec. 64, the only section which deals with priorities. A lienor needs no priority. In re Howell & King Co., Inc., D.C., 16 F. Supp. 984.

A statute fixing priority of claims of the United States does not make them liens preserved by Sec. 67. An income tax is not a perfected lien until notice is filed. Such a tax is not a tax on property, but a personal charge against taxpayer. A statute makes it a lien when assessment list is received and notice filed, but the imposition of the tax does not ipso facto make it a lien. Reese v. United States et al., 5 Cir., 75 F.2d 9; see In re Knox-Powell-Stockton Co., 9 Cir., 100 F.2d 979.

Despite the two code sections quoted, the state legislature has power to classify taxes and provide different liens for different classes of taxes and different orders of payment of taxes. Taxes are postponed to a year's support. Olmstead et al. v. Clark, Sheriff, 181 Ga. 478, 182 S.E. 513. Taxes are inferior to claims of depositors of insolvent banks. Felton v. McArthur, Sheriff, 173 Ga. 465, 160 S.E. 419, 423. In that case the tax was squarely within code sections 92-5707 and 92-5708 and the court held they were impliedly repealed as to depositors in insolvent banks. Such ruling is not necessary in this case because the act imposing the tax provides for its priority. The legislature, in providing for such priority as is provided in the Bankruptcy Act, negatives any intention of investing contributions with a lien which is ahead of the priorities provided in that act. In the Felton case, supra, the court said: "It does not seem that it was the intention of the makers of the Constitution to deny to the Legislature the power to fix the priority of payment of taxes, and to make such payments inferior to the payment of other debts of an insolvent bank." Indeed, the legislature, not only had the power to do so, but in the original unemployment compensation act did in fact make contributions inferior to taxes and wages, and the legislature in the amendment intended that contributions should be without lien and should take their place in bankruptcy under Sec. 64, along with taxes without lien due any state or the United States.

In Atlanta Trust Co. v. Atlanta Realty Corporation, 177 Ga. 581, 170 S.E. 791, 793, the lien for gross receipts tax was held superior to a deed to secure debt, but there the act imposing the tax provided "that a tax due and unpaid under this Act shall constitute a debt due the State, and may be collected by action in debt or assumpsit or other appropriate judicial proceeding, which remedy shall be in addition to all other existing remedies; and it shall constitute a lien upon all the property of the taxpayer * * *." The act now under consideration does not provide that contributions shall constitute a lien on property of the taxpayer and does not provide that the remedy of collection by suit shall be in addition to all other existing remedies.

Another consideration lends support to the referee's conclusion. Unemployment taxes collected by the Federal Government are collected for exactly the same purpose as those collected by the State. The Federal tax is 3% with a credit of 90% of the tax or 2.7% for contributions made to the State. It seems likely that the State intended that its collections should be governed by the same principles as those governing the collections by the Federal Government, inasmuch as the State is collecting 2.7% and the Federal Government is collecting .3%, all to be used for the same

purpose. Although the Federal tax is given a lien "upon all property and rights to property", belonging to the person liable for the tax, by Section 3670 of the Internal Revenue Code, yet by Section 3672 of the Internal Revenue Code, the lien of this tax as well as the lien of other Federal taxes is not valid against any mortgagee until notice of the tax lien has been filed by the Collector. United States v. Beaver Run Coal Co. (Boucher-Cortright Coal Co.) 3 Cir., 1938, 99 F.2d 610, and cases cited. The same result is brought about by construing the Georgia law to mean that the state would be entitled to a lien as against mortgagees only as to such mortgages as were taken after the State had obtained a judgment and recorded the execution upon the general execution docket. On the other hand, prior to the coming into existence of such a lien, under the Georgia law, the State would be entitled to the same priority as is provided for in the Bankruptcy Act, Section 64, in the case of other taxes without lien.

Moreover, the legislature knew that it would be impractical for every purchaser or mortgagee to check the status of the employer's unemployment tax account as is commonly done to guard against the lien of ad valorem taxes and it probably did not intend the consequences which would result from making contributions a lien upon all the property of the employer which would bind it in the hands of bona fide purchasers and mortgagees.

The New Jersey Act made contributions a lien except as against innocent purchasers for value. It provided for collection by suit but made contributions a lien, whether sued upon or not. That act was discussed in the case of In re Lambertville Rubber Co., Inc., D.C., 27 F.Supp. 897. In that case the contention was made that, like Federal taxes, the lien was inchoate and was never perfected so as to come under Sec. 67 instead of Sec. 64. The court said that contention seems to be confirmed by the United States Supreme Court but decided that under 67, sub. b the lien could have been perfected and that actual payment rendered it unnecessary for the state to perfect its lien. The case was reversed in 3 Cir., 111 F.2d 45, the court saying that when bankruptcy intervened the lien was transformed into a priority under Sec. 64.

The Georgia act creates no lien but, even if it did, it might be necessary to perfect it by suit in order to bring it under Sec. 67. As to necessity of perfecting lien, see United States v. Texas et al., 62 S.Ct. 350, 86 L.Ed. ——, decided by Supreme Court of United States, December 22, 1941.

Similar contributions under the Illinois act were held to be taxes falling under Sec. 64. In re Mid America Co. et al., D.C., 31 F.Supp. 601.

In the case of In re Mytinger, D.C., 31 F.Supp. 977, contributions, though made a lien by Texas statute, were placed under Sec. 64. See In re William Akers Jr. Co. D.C., 31 F.Supp. 900 as to Pennsylvania act and In re Oshkosh Foundry Co., D.C., 28 F.Supp. 412, as to Wisconsin act.

In the case of In re Mosby Coal & Mining Co., D.C., 24 F.Supp. 1022, it was held that contributions under Missouri act were not such a tax as was contemplated by a general statute of that state making taxes prior liens. Contra, in Kentucky, In re Auto Electric Repair & Parts Co., D.C., 41 F.Supp. 3.

The conclusion is that the Bureau's claim for contributions is not a lien claim coming under Sec. 67.

In this case, therefore, county taxes and city taxes fall under Sec. 67 and come first (except that taxes are subordinated under 67, sub. c), and, after payment of R. F. C.'s secured debt, the expenses and cost of administration and wages come in for payment under Sec. 64, until the fund is exhausted.

In this circuit, where sale of mortgaged property does not bring enough to satisfy the mortgage in full, the mortgage holder cannot be compelled to contribute to general fund of estate more than the reasonable cost of selling the property, usually measured by actual cost in state court of foreclosing lien. In re Lake Nursery Co., 5 Cir., 119 F.2d 535; Gugel v. New Orleans Natl. Bank, 5 Cir., 239 F. 676; see Volume 3 Collier on Bankruptcy, 14th Ed., pp. 2071, 2072.

If the property sold for $4,400, the cost of foreclosing the bill of sale in a state court would have been slightly over $85.00, as follows:

1. Affidavit $3.00
2. Levy 3.00
3. Advertising (same as in bankruptcy) 16.00
4. Sheriff's commission 63.12 .. $85.12

The exact amount will be determined by the referee, but for illustrative purposes $85 will be used.

From a supplemental certificate of the referee it appears that the amount of taxes has not been finally adjudicated but, as proved, the city taxes are $172.76 and the county taxes $340.23, totaling $512.99. For the purpose of illustrating the method of distribution, those figures will be used and, if they are reduced by the referee, proper adjustment can be made.

If no part of the estate had been distributed, the following would have been the proper order of distribution:

The $85, cost of foreclosure in state court, should be deducted from the $4,400 and placed in the general fund. That would leave $4,315.

The taxes, aggregating $512.99, are ahead of the bill of sale. Therefore, deduct that amount from $4,315 and set it aside to be used, if necessary, in paying debts to which statutory liens are subordinated by 67, sub. c. That leaves $3,802.01 out of which to pay R. F. C.'s claim of $3,647.45. Pay that claim and there will be left $154.56.

The fund remaining for distribution would then be made up of $182 plus $85 plus $154.56, aggregating $421.56.

The sums to be paid would be:

| | |
|---|---|
| Fire insurance premium | $ 20.62 |
| Advertising | 16.00 |
| Rent | 45.00 |
| Trustee's bond premium | 25.00 |
| Receiver's commission | 37.91 |
| Trustee's commission | 131.64 |
| Trustee's expenses | 9.50 |
| Fee of bankrupt's attorney | 100.00 |
| Fee of trustee's attorney | 150.00 |
| | 535.67 |

Toward the payment of the $535.67 apply the $421.56 and there is left unpaid $114.11.

Another item of cost remaining unpaid is the referee's compensation, which has not been fixed. Not intending to suggest what the referee's compensation should actually be, just for the purpose of this illustration, let an arbitrary figure of $150 be assumed. Then, that $150 and the unpaid $114.11 make a total of $264.11 yet to be paid.

Now, the $512.99 set aside to taxes is subordinate to cost of administration and wages under 64(1) and (2). Therefore, out of the tax money, pay the $264.11, leaving $248.88 in the tax fund. Then, apply the $248.88 to the wage claims proportionately. That would exhaust the fund and leave $84.12 of the wages unpaid.

The distribution of the $4,582 would have been, as follows:

| | |
|---|---|
| R. F. C. | $3647.45 |
| Costs, etc. | 685.67 |
| Wages (proportionately) | 248.88 .. $4582.00 |

The result is that where unsubordinated liens under Sec. 67 and debts under 64(1) and (2) exhaust the fund, taxes on personal property, not accompanied by possession, cannot be paid. Section 67, sub. c.

However, that scheme of distribution is predicated on the assumption that none of the estate has been paid out. In fact, the wage claims in the sum of $333 have already been paid by consent of R. F. C. and without objection by anyone. The wage claims were inferior to the secured debt of R. F. C. and to debts under Sec. 64(1).

A lienholder, consenting to payment of inferior debts ahead of his lien, to that extent waives his lien. Harrington v. Union Oil Co. et al., C.C., 144 F. 235(2). Ordinarily, all the consenting and non-objecting parties who held superior claims would bear the loss proportionately, but here those entitled to be paid under Sec. 64(1) were under no necessity of objecting in their own interest, inasmuch as their claims were in effect being ordered paid out of the fund remaining in court. If they were to be paid in any event, it was immaterial to them whether wages were paid first by consent of R. F. C. In that situation R. F. C. must be held to have waived its lien in such amount as would not otherwise have gone to pay wage claims.

Still using the same figures as to amount of taxes and referee's compensation, which may be changed when the referee finally passes upon them, the plan of distribution would be, as follows:

From the $4,400 deduct the wage claims of $333, leaving $4,067. From that remainder deduct the $85, cost of foreclosure in state court, leaving $3,982. From that remainder deduct $512.99 taxes (later to be subordinated to other claims), leaving $3,469.01 to go to R. F. C., which sum may later be increased if under this plan of distribution any sum goes to pay wages, R. F. C. having already paid the wages.

Now, there is in the general fund only $182 plus $85, totaling $267. The claims under Sec. 64(1) amount to $685.67, toward the payment of which apply the $267, leaving unpaid $418.67. Pay that out of the $512.99 set aside to taxes. That leaves of the tax money $94.32 which would next in order go to pay wages. However, the wages having been paid by R. F. C., the · $94.32 should go to R. F. C., which added to $3469.01, totals $3,563.33, the amount to be paid to R. F. C.

A shorter way of saying it is that if the wages had not been paid, there would have been $248.88 to apply on the wage claims. The payment made amounted to $333. R. F. C., therefore, consented to an overpayment of $84.12. That sum, deducted from its claim of $3,647.45, leaves $3,-563.33.

The fund would, therefore, be distributed, as follows:

| | | |
|---|---|---|
| R. F. C. | $3563.33 | |
| Claims under Sec. 64 | | |
| (1) | 685.67 | .. $4249.00 |

The $4,249 plus the $333 paid to wage claimants make up the total estate of $4,-582.

The order of the referee allowing the claim for contributions under the Unemployment Compensation Act as a priority claim, subordinate to the claim of R. F. C., will be approved by an order denying the petition for review and confirming the order of the referee.

The petition for review filed by R. F. C. will be granted by an order reversing the order of the referee and remanding the case to the referee for disposition in accordance with this opinion.